UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

TROIKA MISSION GROUP, INC., TROIKA MISSION : 
HOLDINGS, INC., MISSIONCULTURE LLC, :
MISSION-MEDIA HOLDINGS LIMITED, MISSION- :   Index No.: 19-cv-00145-ER
MEDIA LTD., and MISSION MEDIA USA INC., :
  :
                      Plaintiffs, :
  :
        -against- :
  :
NICOLA STEPHENSON, JAMES STEPHENSON, and :
ALLMAC LLC, :
  :
                Defendants. :
  :

------------------------------------------------------------------- X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY ARBITRATION

WITHERS BERGMAN LLP
Dean R. Nicyper
Emma Lindsay
Chaya F. Weinberg-Brodt
Joseph Gallo
430 Park Avenue
New York, New York 10022
Telephone: (212) 848-9800
Attorneys for Plaintiffs

**Table of Contents**

Page(s)

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ...................................................................................................2

    A.    TMG's Purchase of the Mission Companies from the Stephenson
          Defendants...............................................................................................2

    B.    The EPA Provides for Litigation of All Disputes Under All Related
          Agreements in New York Federal or State Court .......................................3

    C.    The Stephenson Defendants Fraudulently Induced TMG and TMH to Enter
          Into the EPA and Breached the EPA, the GPA, and Their Employment
          Agreements...............................................................................................5

ARGUMENT .......................................................................................................................7

    POINT I  COURTS ARE EMPOWERED TO STAY ARBITRATION
              WHERE  THE PARTIES' AGREEMENT CALLS FOR
              LITIGATION OF THE CLAIMS......................................................7

    POINT II UNDER THE CIRCUMSTANCES PRESENT HERE, THE
              PARTIES'  AGREEMENTS CALL FOR LITIGATION, NOT
              ARBITRATION, OF ALL  CLAIMS MADE IN THE
              STEPHENSONS' DEMAND FOR ARBITRATION ......................8

CONCLUSION...................................................................................................................17

**Table Of Authorities**

**Cases**                                                                                    **Page(s)**

*AGR Fin. L.L.C. v. Ready Staffing, Inc.,* 99 F.Supp.2d 399 (S.D.N.Y. 2000)...............................10

*Aguas Lenders Recovery Group LLC v. Suez, S.A.,*
    585 F.3d 696 (2d Cir. 2009)..........................................................................................9, 10, 13

*Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.),* 672 F.3d 113
    (2d Cir. 2011).............................................................................................................................8

*Applied Energetics, Inc. v. NewOak Capital Mkts, LLC,*
    645 F.3d 522 (2d Cir. 2011)....................................................................................................8, 9

*Bezuszka v. L.A. Models, Inc.,*
    2006 U.S. Dist LEXIS 13620 (S.D.N.Y. Mar. 27, 2006) ......................................................14

*Eastman Chem. Co., v. Nestlé Waters Mgmt. & Tech.,*
    2011 U.S. Dist. LEXIS 99123 (S.D.N.Y. Aug. 29, 2011) ........................................................9

*Encompass Aviation, LLC v. Surf Air, Inc.,*
    2018 U.S. Dist LEXIS 205596 (S.D.N.Y. Nov. 30, 2018)........................................11, 12, 13

*Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.,*
    50 A.D.3d 185 (4th Dep't 2008)............................................................................................10

*Goldman, Sachs & Co. v. Golden Empire Schs Fin. Auth.,*
    764 F.3d 210 (2d Cir. 2014)..................................................................................................8, 9

*ICICI Bank, Ltd. v. Essar Global Fund Ltd.,*
    565 B.R. 241 (S.D.N.Y. 2017)...............................................................................................10

*Kelly v. Waters Corp.,*
    2017 Mass. Super LEXIS 180 (Mass. Super. Sep. 27, 2017) ........................................... 10-11

*King Bros Prods. v. RKO Teleradio Pictures, Inc.,*
    208 F. Supp. 271 (S.D.N.Y. 1962)........................................................................................14

*NASDAQ OMX Group, Inc. v. UBS Secs. LLC,*
    957 F.Supp.2d 388 (S.D.N.Y. 2013)........................................................................................8

*Wonderful N.Y. Props. LLC v. Dezba Asset Recovery, Inc.,* 2017 NYLJ LEXIS
    3040 (Nas. Sup. Ct. Oct. 27, 2017)........................................................................................11

Plaintiffs Troika Media Group, Inc. ("TMG"), Troika- Mission Holdings, Inc. ("TMH," and collectively with TMG, "Troika"), MissionCulture LLC, Mission-Media Holdings Limited, Mission Media, Ltd., and Mission Media USA Inc. (collectively, the "Mission Companies"), respectfully submit their Memorandum of Law in Support of their Motion to Stay the Arbitration purportedly commenced by Defendants Nicola Stephenson ("NS") and James Stephenson ("JS," and collectively with NS, the "Stephensons" or the "Stephenson Defendants").

## PRELIMINARY STATEMENT

The Stephensons and Troika executed an Equity Purchase Agreement, dated as of June 29, 2018 (the "EPA").  It contained a forum selection clause expressly permitting all claims under all agreements associated with the EPA (including claims under the Stephensons' Employment Agreements) to be heard in the United States District Court for the Southern District of New York.  Plaintiffs therefore properly commenced this action in this Court, which is empowered to resolve the entire dispute between the parties.

Under the EPA's forum selection clause, once either party commences litigation in the Southern District of New York, this forum, as a matter of law, obtains exclusive jurisdiction to resolve the dispute, and all parties waive any forum or venue objections to this Court's exclusive jurisdiction.  The EPA also expressly provides that if there are any discrepancies between the EPA and any ancillary document (including the Stephensons' Employment Agreements), the provisions of the EPA control.  Thus, once Plaintiffs commenced this action, the EPA's forum selection clause became mandatory for this dispute, overrode any conflicting provision in the employment agreements, and required the parties to litigate the entire dispute here.

The Stephensons are now attempting to do an end-run around the EPA's controlling, mandatory, and all-encompassing forum selection clause by seeking to commence an arbitration

before the American Arbitration Association ("AAA") on January 25, 2019, well after this action was filed.  The Demand for Arbitration purports, incorrectly, to address their Employment Agreements only, and the basis for the Demand for Arbitration is that that the Employment Agreements call for arbitration before the AAA.  All of the parties, claims, facts and issues associated with the Demand for Arbitration can fully be addressed in this action, but only some of the parties, claims, facts and issues in this action could be addressed in the arbitration the Stephenson Defendants are seeking, if it were proper.

The Stephensons' efforts to avoid this forum must fail.  Once Plaintiffs commenced this action under the EPA's forum selection clause, asserting claims under the EPA, GPA, and the Employment Agreements, this Court was vested with exclusive jurisdiction over this dispute, and the Stephensons lost any right they may have had to challenge the laying of the entire dispute in this forum.  The Stephensons' Demand for Arbitration therefore should be stayed, and the parties should proceed to resolve their entire dispute in the one forum they all agreed was proper – this Court.

## STATEMENT OF FACTS

### A.    TMG's Purchase of the Mission Companies from the Stephenson Defendants

On June 29, 2018, Plaintiff TMG purchased the Mission Companies from the Stephenson Defendants, pursuant to the EPA between the Stephenson Defendants, TMG, and TMH, and pursuant to the Goodwill Purchase Agreement ("GPA") between NS, TMG, and TMH.  In consideration for acquiring the Mission Companies, TMG paid the Stephenson Defendants up-front consideration consisting of $11 million in cash and $2 million in TMG stock, and agreed that they would be eligible for future cash payments and additional TMG stock under certain contingency and earn-out provisions in the contracts if the business were to achieve specified

financial goals.  (*See* Declaration of Joseph Gallo in Support of Motion to Stay Arbitration, executed on February 25, 2019 ("Gallo Dec.") Exs. 4 and 5).

In connection with the EPA, the Stephensons executed certain "Ancillary Documents," as that term is defined in the EPA, comprising: the GPA, the Escrow Agreement, each Mission US Assignment, each Mission UK Share Transfer, the James Employment Agreement and the Nicola Employment Agreement, as each of those terms is defined in the EPA.  (*See* Gallo Dec. Ex. 4, p.2).  The EPA, the GPA, James Employment Agreement and Nicola Employment Agreement are all governed by New York law.  (*See* EPA, Gallo Dec. Ex. 4, §10.10(a); GPA, Gallo Dec. Ex. 5, §7.10(a); James Employment Agreement, Ex. B to Gallo Dec. Ex. 4, § 22; and Nicola Employment Agreement, Ex. C to Gallo Dec. Ex. 4, § 22).[1]  The closing of the EPA occurred simultaneously with the execution and delivery of the EPA and each of the Ancillary Documents.  (*See* EPA, Gallo Dec. Ex. 4, §§ 2.03(b)(i)(G); 2.07).

## B.    The EPA Provides for Litigation of All Disputes Under All Related Agreements in New York Federal or State Court

The EPA contains a forum selection clause stating that all suits, actions, or proceedings arising under the EPA, or under any of the Ancillary Agreements (including the Employment Agreements) may be brought in either federal or state court, so long as the court is located in the State, City, and County of New York.  The EPA's forum selection clause further states that the parties "irrevocably submit to the **exclusive jurisdiction**" (emphasis added) of the New York federal and state courts in any such suit, action, or proceeding, and that the parties irrevocably waive any claims of inconvenient or improper forum for any such suit, action, or proceeding. Specifically, in prominent, upper case type, the EPA's forum selection clause states:

---

[1] The James Employment Agreement" and the Nicola Employment Agreement are referred to herein as the "Employment Agreements."

**ANY** LEGAL SUIT, **ACTION** OR PROCEEDING **ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE ANCILLARY DOCUMENTS** OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY **MAY BE INSTITUTED IN THE FEDERAL COURTS** OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF NEW YORK IN EACH CASE LOCATED IN THE CITY OF NEW YORK AND COUNTY OF NEW YORK, **AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS** IN ANY SUCH SUIT, ACTION OR PROCEEDING. . . . THE PARTIES IRREVOCABLY AND UNCONDITIONALLY **WAIVE ANY OBJECTION TO THE LAYING OF VENUE** OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND **IRREVOCABLY WAIVE** AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCCEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN **INCONVENIENT FORUM**.

(*See* EPA, Gallo Dec. Ex. 4, § 10.10(b) (emphasis added)).[2]  Because this provision provides for "exclusive jurisdiction" of the New York federal or state courts, and contains an irrevocable waiver of claims of improper or inconvenient forum, it functions as a mandatory forum selection clause as soon as either party files an action in the specified court based upon it.

The EPA's forum selection clause is broadly worded to be all-inclusive and to apply to any and all claims between the parties.  Thus, it provides for litigation in the New York courts not only of "any legal suit, action or proceeding arising out of or based upon" the EPA,  but also to "any legal suit, action or proceeding arising out of or based upon . . . the Ancillary Documents or the transactions contemplated hereby or thereby." (*Id.*)  In turn, the term "Ancillary Documents" is defined in the EPA to include both Employment Agreements, as well as all the other documents contemplated by the EPA.  (*See id.* p.2).

Notwithstanding all of the foregoing, the Employment Agreements have arguably conflicting forum-selection language calling for AAA arbitration for disputes under those specific Employment Agreements.  (*See* Exs. B and C to Gallo Dec. Ex. 4, § 16).  The

---

[2] The GPA contains an identical forum selection clause.  *See* Gallo Dec. Ex. 5, §7.10(b)

Employment Agreements are between JS and NS, respectively, on the one hand, and only two of

the Troika/Mission companies on the other hand, i.e., TMG, and Mission Media USA, Inc.

Those agreements deal only with the employment of JS and NS, respectively, at Mission Culture

LLC, Mission USA, and Mission-Media Holdings Limited.  (*See* Exs. B and C to Gallo Dec. Ex.

4).  Accordingly, the Employment Agreements apply to only some of the Plaintiffs in this action,

and to only some of the allegations and claims in this action.

Where parties sign multiple, complex, and interrelated agreements, the possibility of

conflicting provisions between those agreements, while regrettable, is something that parties can

anticipate and agree in advance on how to resolve.  Here, all parties to the EPA (and to the

Ancillary Documents) did so by including a provision in the EPA which states that, "In the event

of any inconsistency between the statements in the body of this Agreement and those in the

Ancillary Documents . . ., the statements in the body of this [EPA] Agreement will control."

(Gallo Dec. Ex. 4, § 10.06).  Thus, if the EPA and the Employment Agreements, which are

Ancillary Documents, contain inconsistent dispute resolution provisions, the dispute resolution

provision in the EPA controls.

## C.     The Stephenson Defendants Fraudulently Induced TMG and TMH to Enter Into the EPA and Breached the EPA, the GPA, and Their Employment Agreements

As more fully set forth in the Amended Complaint, the Stephenson Defendants

fraudulently induced the EPA by misstating the earnings on the balance sheet of the Mission

Companies by more than $720,000.  (*See* Amended Complaint ("AC"), Gallo Dec. Ex. 2, ¶ 24;

*see* also Complaint, Gallo Dec. Ex. 1, ¶ 25).

Furthermore, as soon as the contracts were signed and the Stephenson Defendants

received their substantial up-front consideration, they began deliberately and systematically to

breach numerous obligations they had under the EPA, the GPA, and their Employment

Agreements, in a concerted effort to deny TMG the benefits of its bargain – ownership of the companies which TMG had purchased, and which the Stephenson Defendants had sold.

As a result of the Stephenson Defendants' misconduct, on January 4, 2019, TMG sent them a Notice of Claim, Demand for Indemnification, and Assertion of Rights and Remedies under the EPA and GPA.  (*See* Cpl., Gallo Dec. Ex. 1, ¶ 31).  In addition, on January 4, 2019, Plaintiffs terminated JS' and NS' employment for cause, by termination letters dated, and effective as of, January 4, 2019.  (*Id.* ¶ 32).

Immediately upon the termination of their employment, as more fully set forth in the Amended Complaint, the Stephenson Defendants further breached the EPA, GPA, and their Employment Agreements, by taking deliberate and wrongful steps to disrupt the business of TMG and Mission, to wrest control of Mission from TMG by putting the UK Mission entities into administration, and to interfere with Plaintiffs' computer systems, employees, shareholders, and customers.  (*See* AC, Gallo Dec. Ex. 2, ¶¶ 49-73).

On January 7, 2019, as a result of this conduct, Plaintiffs commenced this action against Defendants asserting claims for their repeated breaches of the EPA, GPA, and Employment Agreements, as well as for their violations of the federal securities laws by engaging in fraud in connection with the purchase and sale of securities, and the federal computer crime laws for their post-termination intrusions into Plaintiffs' email and IT systems.  Pursuant to Section 10.10(b) of the EPA, Plaintiffs filed their action under the EPA, the GPA, and the Employment Agreements in the United States District Court for the Southern District of New York.   In connection with filing their initial complaint, as this Court is aware, Plaintiffs sought an immediate TRO enjoining Defendants from continuing their improper conduct.  (*See* Cpl., Gallo Dec. Ex. 1).

On January 7, 2019, this Court issued a TRO, as requested by Plaintiffs.  On February 13, 2019, this Court issued a preliminary injunction, encompassing the entirety of the TRO, as well as additional restrictions that Plaintiffs had sought between January 7, 2019 and February 13, 2019 to prevent additional wrongful conduct by the Stephenson Defendants.

On January 25, 2019, nearly three weeks after this action was filed, the Stephenson Defendants purported to start an arbitration before the AAA.  All the claims asserted by Defendants before the AAA arise out of a subset of the transactions and occurrences which had already been pleaded in Plaintiffs' Complaint.  The Stephenson Defendants' Demand for Arbitration does not includes several of the companies that are asserting claims as Plaintiffs in this lawsuit, and it does not include AllMac, which is a defendant in this lawsuit.

Because all of the Stephenson Defendants' claims in their Demand for Arbitration fall within the forum selection clause of the EPA, and relate to (and are intertwined with) the claims in this lawsuit, and because this lawsuit was filed before the Stephensons filed their Demand for Arbitration, the Stephenson Defendants are obliged to litigate their claims in this forum. Plaintiffs therefore are now moving to stay the Stephenson Defendants' Demand for Arbitration so that all the parties' claims and counterclaims can be heard in one forum, before this Court, which is the forum all parties agreed was appropriate for all disputes when they signed the EPA.

## ARGUMENT

### POINT I

### COURTS ARE EMPOWERED TO STAY ARBITRATION WHERE THE PARTIES' AGREEMENT CALLS FOR LITIGATION OF THE CLAIMS

Where parties execute arguably conflicting forum selection provisions, potentially pointing to both litigation and arbitration, courts are empowered to interpret the conflicting, or arguably conflicting, provisions to determine which forum was actually selected by the parties.

In making this determination, there is no presumption in favor of arbitration. *Goldman, Sachs & Co. v. Golden Empire Schs Fin. Auth.,* 764 F.3d 210, 215 (2d Cir. 2014) ("In other words, while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.") (quoting *Applied Energetics, Inc. v. NewOak Capital Mkts, LLC,* 645 F.3d 522, 526 (2d Cir. 2011)).

Federal courts have the remedial power to stay arbitration in appropriate circumstances, including when a court determines that the relevant agreements do not call for arbitration of a dispute. *See Goldman Sachs*, 764 F.3d at 213-14 ("Federal courts generally have remedial power to stay arbitration.") (citing *Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.)*, 672 F.3d 113, 139-41 (2d Cir. 2011) ("It makes little sense to us to conclude that district courts lack the authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement…"); *accord NASDAQ OMX Group, Inc. v. UBS Secs. LLC,* 957 F.Supp.2d 388, 407 (S.D.N.Y. 2013) (court had power to enjoin arbitration, where claims at issue fell within exception to parties' arbitration agreement).

## POINT II

### UNDER THE CIRCUMSTANCES PRESENT HERE, THE PARTIES' AGREEMENTS CALL FOR LITIGATION, NOT ARBITRATION, OF ALL CLAIMS MADE IN THE STEPHENSONS' DEMAND FOR ARBITRATION

In the Second Circuit, when parties to an agreement to arbitrate subsequently execute an all-inclusive, mandatory forum selection clause providing for court litigation, that forum selection provision vitiates the arbitration clause, even if it does not expressly reference it. *See Goldman Sachs,* 764 F.3d at 215; *Applied Energetics,* 645 F.3d at 525-26.

The rule expressed by the Second Circuit in *Goldman* and *Applied Energetics* is applicable here. Under it, in these circumstances, this matter must be litigated in this Court, and the arbitration purportedly commenced by the Stephenson Defendants should be stayed.

First, as a matter of settled Second Circuit and New York State law, the forum selection provision in the EPA became mandatory as soon as Plaintiff filed this lawsuit in this Court. Second, the forum selection clause in the EPA is all-inclusive, and covers all claims under the EPA, GPA, and Employment Agreements, and any action or proceeding arising out of or based on any of those agreements.  (*See* Gallo Dec. Ex. 4, §10.10(b)).  Third, the EPA contains an "override" clause stating that in the event of conflict between the EPA and any Ancillary Document (including the Employment Agreements) the provisions of the EPA "will control." (*See* Gallo Dec. Ex. 4, § 10.06).  Thus, although the EPA and the Employment Agreements were executed simultaneously, the EPA's forum selection provision overrides any conflicting forum selection provisions in the Employment Agreements based on Section 10.06 of the EPA, similarly to way the EPA's forum selection provision would override conflicting provisions in the Employment Agreements if the EPA had been executed after the Employment Agreements.

The forum selection clause in the EPA is mandatory here as a matter of law, or at least it became mandatory for the entire dispute as soon as Plaintiffs filed this action.  Specifically, "[p]ursuant to controlling Second Circuit authority, a forum selection clause that combines permissive forum selection language with an express waiver of venue objections is deemed to be mandatory."  *Eastman Chem. Co., v. Nestlé Waters Mgmt. & Tech.,* 2011 U.S. Dist. LEXIS 99123, *4 (S.D.N.Y. Aug. 29, 2011), *citing Aguas Lenders Recovery Group LLC v. Suez, S.A.,* 585 F.3d 696, 700 (2d Cir. 2009) ("The combination of these clauses amounts to a mandatory forum selection clause, at least where the plaintiff chooses the designated forum." )

Under *Aguas* and its progeny, the EPA's forum selection clause, which combines apparently permissive language (*i.e.*, "may be brought") with irrevocable submission by the parties to "exclusive jurisdiction" of courts in New York, and a waiver of forum objections, amounts to a mandatory selection of the New York courts as the only appropriate forum to hear this entire dispute, as soon as Plaintiffs commenced this litigation in the United States District Court for the Southern District of New York.  *Aguas*, 585 F.3d at 696 n.2, 700; *accord ICICI Bank, Ltd. v. Essar Global Fund Ltd.,* 565 B.R. 241, 252-53 (S.D.N.Y. 2017) (when forum selection clause had both optional language stating that proceedings "may be" brought in either federal or state court in New York, and a clause waiving claims of improper forum, forum selection clause became mandatory as soon as plaintiff filed in either of the designated fora).

In addition, as a matter of New York law, where (as here) a contract uses permissive language such as "may be brought," to state that an action may be brought in any of two or more courts, and further states that the parties submit to the "exclusive" jurisdiction of all those courts, the forum selection provision is mandatory as a matter of law, although it does give the parties the option of choosing any of the courts named in the provision.   *See Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.,* 50 A.D.3d 185, 186-88 (4th Dep't 2008):

> [W]e also conclude that the use of the phrase "*may* be litigated in any federal or state court of competent jurisdiction located in the Borough of Manhattan"  . . . does not negate the mandatory nature of the forum selection clause.  Indeed, that phrase merely makes clear that the party commencing an action may choose whether to litigate the action in either federal or state court in Manhattan.  That is the extent of the party's choice.  The phrase in the agreement otherwise requires the parties to submit to the personal and exclusive jurisdiction of one or the other of the Manhattan courts identified.

*Id.* (emphasis by the court)*, citing AGR Fin. L.L.C. v. Ready Staffing, Inc.,* 99 F.Supp.2d 399, 400 (S.D.N.Y. 2000); *accord Kelly v. Waters Corp.,* 2017 Mass. Super LEXIS 180, **19-20

10

(Mass. Super. Sep. 27, 2017); *Wonderful N.Y. Props. LLC v. Dezba Asset Recovery, Inc.,* 2017 NYLJ LEXIS 3040, \*\*3-5 (Nas. Sup. Ct. Oct. 27, 2017).

The recent case, *Encompass Aviation, LLC v. Surf Air, Inc.,* 2018 U.S. Dist LEXIS 205596 (S.D.N.Y. Nov. 30, 2018) (McMahon, J.), is squarely on point.  In *Encompass* (as in this case) the parties signed multiple agreements, containing different forum selection clauses.  In *Encompass,* as in this case, one of the agreements (the "MIPA") had a forum selection clause that applied to any case arising under either the MIPA or under any of the other transaction documents.  Specifically, the clause in *Encompass* stated:

> Any legal suit, action or proceeding arising out of or based upon this Agreement, the other Transaction Documents or the transactions contemplated hereby or thereby ***may be instituted*** in the federal court of the United States of America or the courts of the state of New York in each case located in the city of New York and each party irrevocably submits to the ***exclusive jurisdiction*** of such courts in any such suit, action, or proceeding. . . . .

*Id.* \*18 (emphasis added).  This language is substantively identical to the forum selection clause in the EPA at issue in this case.  (*See* Gallo Dec. Ex. 4, §10.10(b)).

The MIPA's forum selection clause (like the EPA here), further contained an irrevocable waiver of all venue objections.  *Encompass*, 2018 U.S. Dist. LEXIS 205596 at \*23  The MIPA likewise stated that, "In the event of any inconsistency between the statements in the body of this Agreement and those in the Ancillary Agreements,…the statements in the body of this Agreement will control."  *Id.* \*20.  This language in the MIPA is substantively identical to Section 10.06 of the EPA.  (*See* Gallo Dec. Ex. 4, §10.06).

Plaintiff in *Encompass* brought a suit in the Southern District of New York pursuant to the forum selection clause in the MIPA.  However, Plaintiff's suit related only to claims under the ancillary documents, not to claims under the MIPA.  Defendant then asserted counterclaims under the ancillary documents, including counterclaims under a "License Agreement."  The

License Agreement's forum selection clause provided for exclusive jurisdiction in Los Angeles County.  Defendant then moved to transfer venue to Los Angeles, based on the License Agreement's forum selection clauses.  *Encompass*, 2018 U.S. Dist. LEXIS 205596 at \*\*9-10. Defendant argued that the MIPA's forum selection clause did not apply, because no party had brought suit under the MIPA, and because the ancillary document had forum selection clauses that conflicted with the MIPA.

The court in *Encompass* denied the motion on the ground that the forum selection clause in the MIPA controlled, and mandated that the litigation continue in New York federal court. The court first found that the MIPA's forum selection clause covered claims under the ancillary documents.  *Id* \*19.  The Court further found that under "a plain reading" of the MIPA, "the MIPA is to control when its terms are different from those in the 'Ancillary Agreements.'" *Id.* \*\* 19-20, and "[t]hus, by following the clear and explicit terms of the Parties' own agreement, the Court easily finds that the MIPA's forum selection clause applies to the claims in this case." *Id.* \*21.

The court in *Encompass* harmonized the apparently conflicting forum selection provisions by holding that the first sentence of the MIPA's forum selection clause permitted, but did not require, the parties to file claims under the ancillary documents in New York federal or state court.  *Id.* \*24.  However, the Court continued, once either party filed a claim in New York under the MIPA's forum selection clause, the New York forum became both mandatory and exclusive for that entire dispute.  Therefore, the motion to transfer was denied.  *Id.* \*25.[3]

---

[3]  The Los Angeles forum selection clause therefore was not rendered meaningless by the court's decision, but, instead the New York forum clause merely took precedence once the New York forum was selected.

The court in *Encompass* further recognized that other courts had found similar forum selection clauses to be mandatory, not permissive.  *Id.* *27 (collecting cases).   However, the court found that, "in the end, whether the forum selection clause in this case is mandatory or permissive – or some sort of hybrid – makes no difference.  This case stays here . . . ."  *Id.* *28. *See also id.* *32 ("Defendant signed the MIPA, in which it agreed to litigate in New York if Encompass sued it in New York under any of the Transaction Documents – including the License Agreement."); *Aguas,* 585 F.3d at 700:

> We need not decide whether the forum selection clauses in the present matter are, standing alone, mandatory or permissive.  At least one of the contracts . . . contains a waiver of any claims of *forum non conveniens* in addition to a forum selection clause.  The combination of these clauses amounts to a mandatory forum selection clause at least where the plaintiff chooses the designated forum as [plaintiff] did here.  . . . On the present record, it appears that litigation over the IFA involves issues, witnesses and documentary evidence that almost fully overlap with the other claims.  If that part of the litigation must remain in New York, it would be quite inconsistent with the purposes of *forum non conveniens* to dismiss the remaining claims under that doctrine.

*Id.* (citation omitted).

The analysis and result in *Aguas* and *Encompass* apply here.  <u>First</u>, the Stephenson Defendants knowingly signed the EPA, and in that agreement they expressly agreed that all disputes between the parties, including disputes under their Employment Agreements, could be resolved in the United States District Court for the Southern District of New York.  (*See* EPA, Gallo Dec. Ex. 4, § 10.10(b)).  <u>Second</u>, Plaintiffs here filed their action first and did so in the Southern District of New York, asserting claims under the EPA and the GPA (both of which provide for litigation in the Southern District of New York, and neither of which provide for arbitration) as well as under the Employment Agreements. (*See* Cpl., Gallo Dec. Ex. 1, ¶¶ 48-109, 119-125; GPA, Gallo Dec. Ex. 5, § 7.10(b); EPA, Gallo Dec. Ex. 4, § 10.10(b)).  As soon as Plaintiffs did so, the EPA's forum selection clause – and the parties' agreement to the exclusive

jurisdiction of this Court – became mandatory and all-inclusive, and compelled that the entire dispute between the parties (including all compulsory counterclaims under Fed. R. Civ. P. 13) be heard exclusively in this forum.  <u>Third</u>, the EPA and GPA do not have arbitration clauses, and therefore claims brought under the EPA and GPA will not be addressed under the Demand for Arbitration.  Indeed, these claims are by far the dominant claims in this action.

The claims asserted by the Stephenson Defendants in the Demand for Arbitration are inextricably intertwined with, and arise from a common set of disputed facts as, the claims Plaintiffs had already previously asserted in the original Complaint under the EPA, the GPA, and the Employment Agreements.  As such, the Stephenson Defendants' purported arbitration claims are compulsory counterclaims to Plaintiffs' claims in this lawsuit as a matter of law.  *See Bezuszka v. L.A. Models, Inc.,* 2006 U.S. Dist LEXIS 13620, **63-69 (S.D.N.Y. Mar. 27, 2006) (counterclaims for breach of contract, fraudulent inducement, and tortious interference were compulsory when "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.") (citations and quotations omitted); *King Bros Prods. v. RKO Teleradio Pictures, Inc.,* 208 F. Supp. 271, 275 (S.D.N.Y. 1962) ("The spirit and intent of Rule 13(a) requires that the entire contractual relationship be deemed to be included within the word 'transaction' in cases sounding in contract.") (citations omitted).

In addition, only two of the six companies that are Plaintiffs in this lawsuit are parties to the Employment Agreements, and therefore only two of those six Plaintiffs are named parties in the Arbitration Demand.  Moreover, AllMac is a defendant in this lawsuit, but is not a party named in the Stephenson Defendants' Arbitration Demand.  Therefore, to avoid piecemeal

litigation, and potentially conflicting decisions, all of the claims should be heard in one forum –

namely the all-inclusive forum the parties agreed to, which is the Southern District of New York.

As the Complaint makes clear, the dispute between Plaintiffs and the Stephenson

Defendants concerns facts and legal claims that clearly fall outside of the Employment

Agreements.  Plaintiffs have alleged, among other things, that the Stephenson Defendants

fraudulently induced TMG to enter into the EPA and GPA, breached the EPA and GPA in

numerous respects, and violated the federal securities laws and federal computer crime laws.

The Stephenson Defendants' alleged misconduct took place before, during, and after their period

of employment at Plaintiffs' companies. (*See generally* Cpl. and AC, at Gallo Dec. Exs 1 and 2).

Conversely, the Stephensons' Demand for Arbitration makes numerous (false)

allegations, and asserts numerous claims, relating to the EPA, the parties' decisions to enter into

the EPA, alleged breaches of the parties' obligations in the EPA, and the parties' rights under the

EPA. Indeed, those allegations make up the bulk of Defendants' Demand of Arbitration.  (*See*

Demand for Arbitration, Gallo Dec. Ex. 3, ¶¶ 2-3, 5-8, 10-11, 18-24, 30-45, 51-53).  In addition,

to the extent that any parties' claim or allegations ostensibly concerns conduct relating to the

Employment Agreements, the conduct at issue would be equally governed by the terms of the

EPA.  For example, the Demand for Arbitration asserts claims under the non-compete provisions

of the Employment Agreements.  (*See id.*, ¶ 76).  However, similar provisions are also in the

EPA.  (*See* Gallo Dec. Ex. 4, ¶¶ 7.04; 7.05).

Finally, the Stephenson Defendants' claim in their Demand for Arbitration that they were

allegedly fraudulently induced into executing the Employment Agreements is essentially a

disguised claim that they were fraudulently induced in the EPA.  (*See* Demand for Arbitration,

Gallo Dec. Ex. 3, ¶¶ 79-83).  Furthermore, this claim should not proceed except in conjunction

with Plaintiffs' claim in this action that Plaintiffs were fraudulently induced by Defendants to execute the EPA, and all the Ancillary Documents including the Employment Agreements, due to Defendants' deliberate and gross overstatements of the MM Companies' balance sheet assets during the parties' negotiations.  (*See* Cpl., Gallo Dec. Ex. 1, ¶¶ 25, 92-105; AC, Gallo Dec. Ex. 2, ¶¶ 24, 158-172).

Simply put, the parties' overall dispute – and the allegations, claims, and facts upon which that dispute is based – concerns the genesis, the performance, and eventually the end of their entire business arrangement, which business arrangement is governed by the EPA and its Ancillary Documents.  All of the allegations, claims, defenses, and counterclaims of all the parties can and should be heard in this Court.  Only a small subset of them could have been arbitrated, although not following Plaintiffs' commencement of this action (and even those claims would depend on findings of disputed facts concerning conduct under the EPA).  The parties negotiated for, and agreed, that in the event of a dispute such as this, the EPA would control, and would permit the parties to resolve the entire dispute in one place – this Court.

By filing their Demand for Arbitration on what are clearly compulsory counterclaims to the claims that Plaintiffs have already asserted in this Court, the Stephenson Defendants are attempting to do an end-run around the all-inclusive, mandatory forum selection clause they willingly signed, and an end-run around their agreement to the exclusive jurisdiction of this Court.  They are also attempting to multiply the proceedings and force Plaintiffs to battle them in two separate fora, which is a waste of parties' and judicial resources.  The Court should not countenance this result.   By signing the EPA, the Stephenson Defendants irrevocably agreed that this Court was a proper forum for all suits involving the EPA and any and all of Ancillary Documents, and that this Court would become the exclusive forum to resolve a dispute once a

claim was filed here.  The Stephenson Defendants should be held to that agreement, and their Demand for Arbitration should be stayed.

## **<u>CONCLUSION</u>**

For all of the reasons stated, Plaintiffs' motion to stay Defendants' Demand for Arbitration, and to address the entire dispute between the parties in this Court, should be granted, together with such other and further relief as to the Court appears just and proper.

WITHERS BERGMAN LLP

By: _____/s/ Joseph Gallo_____
Dean R. Nicyper
Emma Lindsay
Chaya F. Weinberg-Brodt
Joseph Gallo
430 Park Avenue
New York, New York 10022
(212) 848-9815
Dean.Nicyper@WithersWorldwide.com
Emma. Lindsay@WithersWorldwide.com
Chaya.Weinberg-Brodt@WithersWorldwide.com
Joseph.Gallo@WithersWorldwide.com
*Attorneys for Plaintiffs Troika Media Group, Inc., Troika-Mission Holdings, Inc., MissionCulture LLC, Mission-Media Holdings Limited, Mission-Media Ltd., & Mission Media USA Inc.*