FEDER KASZOVITZ LLP
ATTORNEYS AT LAW

845 THIRD AVENUE
NEW YORK, NY 10022-6601

TELEPHONE: (212) 888-8200          FACSIMILE: (212) 888-7776

E MAIL:

May 28, 2019

**VIA ECF**
Honorable Edgardo Ramos

        Re:    Troika Media Group, Inc. *et al* v. Nicola Stephenson *et ano*
               Civil Action Number 19-cv-00145 (ER)

Dear Judge Ramos:

      As attorneys for the plaintiffs[1], we write pursuant to Rule 2(A)(ii) of Your Honor's Individual Practice Rules to seek leave to file a motion: (a) to disqualify opposing counsel[2] from representing defendants in the Arbitration recently commenced pursuant to Your Honor's Order dated April 24, 2019[3] (Docket No. 57); and (b) to compel the Law Firm to provide previously requested legal services and billing information, which the Law Firm has repeatedly refused to provide.

      As Your Honor is already aware based on the TRO issued on January 7, 2019 and the preliminary injunctions thereafter granted, this litigation stems from the Stephensons having sold their business to plaintiffs in late June 2018, thereafter becoming employees of the Company, then being terminated as employees following a death threat to the Company's managing director and their then maliciously filing a meritless insolvency proceeding in the U.K. against the Company's U.K. subsidiary.

      The Company's proposed motion turns on the Law Firm's breach of its duty of loyalty, conflict of interest, and breach of fiduciary duty stemming from its clandestinely working against

---

    [1] The plaintiff entities including the entities acquired in the transaction that gave rise to the instant dispute are sometimes individually or collectively referred to as the "Company."

    [2] Tannenbaum, Helpern, Syracuse and Hirschtritt, LLP (the "Law Firm").

    [3] While Your Honor's Order, as per the parties' stipulation, directed the parties to first proceed with mediation before U.S. Magistrate Judge Cott, the Law Firm subsequently advised the undersigned that its clients had changed their minds and no longer wished to proceed with mediation, insisting to go straight to Arbitration. As a result, the parties have just recently filed their respective Demands for Arbitration.

the Company's best interests, while supposedly representing it, by plotting with the Stephensons to help them buy back the business which they had just sold to the Company for $13 million.[4]

In connection with the sale of the business, the Law Firm executed an engagement letter with one of the acquired entities, was paid a retainer, and after the acquisition, continued to represent the Company. However, unbeknownst to the Company, while it was supposedly acting as its attorneys and billing it for services purportedly being rendered to and for it, the Law Firm was concealing the actual services it was rendering. In actuality, the Law Firm was providing legal services to the Stephensons in furtherance of their scheme to topple the Company and regain control and ownership of the acquired entities. The Law Firm's role in this plot was uncovered by emails once the Company gained access to the Company's server after this litigation commenced and pursuant to the preliminary injunction issued by Your Honor, Docket No. 37. Through these emails the Company learned that the description of services on its invoice to the Company hid the true work the Law Firm was performing and never revealed that it was aiding and abetting the Stephensons in their wrongful attempt to try to steal back the Company by, *inter alia*, secretly advising the Stephensons regarding bogus claims that might pressure the Company to succumb to a buy-back, revising draft letters for the Stephensons against the Company, and advising them about their continued refusal to turn over bank accounts, as required by the acquisition agreements.

The Law Firm's conflict of interest is undeniable, and, in fact, the Law Firm has not denied it. In response to requests for its withdrawal, the Law Firm has offered no defense beyond its claim that plaintiffs waived the conflict of interest by allegedly delaying for three months in seeking its disqualification. This "defense" is without merit on multiple grounds, including that the Law Firm never obtained or even attempted to obtain an informed written waiver of the conflict as required by Rules of Professional Conduct 1.7 and 1.9.[5] Any delay, as shown below, was largely the result of the Law Firm's repeated refusal to provide information about its legal services to the Company. In any event, the law is clear that a minor delay, particularly with no prejudice to the party whose attorney is sought to be disqualified (the Arbitration is in its infancy,

---

[4] Issues of attorney disqualification and other issues relating to attorney ethical obligations are beyond the purview of arbitrators, and accordingly plaintiffs seek to make this application before the Court. *Biderman Industries Licensing, Inc. v. Avmar, N.V.*, 173 A.D.2d 401, 570 N.Y.S.2d 33 (1st Dept. 1991); *Nw. Nat. Ins. Co. v. Insco, Ltd.*, 2011 WL 4552997 (S.D.N.Y. Oct. 3, 2011).

[5] Other than asserting its meritless excuse of delay (which tacitly acknowledges its conflict of interest), the Law Firm, even after having received an advance copy of plaintiffs' motion on May 22, 2018, with the relevant emails and plaintiffs' supporting 24-page Memorandum of Law revealing their misconduct, has refused plaintiffs' request to explain or justify its conduct, thus making this motion necessary.

2

with no Arbitrator having even been selected, with the Arbitration now stayed by consent), cannot prevent disqualification.[6]

Recognizing how sacrosanct is a lawyer's duty of loyalty to his or her client and the need to prevent conflicts of interest, courts regularly cite to ethical rules of conduct to order disqualification in circumstances far less egregious,[7] such as here where the Law Firm secretly represented adverse interests and adverse parties prior to litigation and afterwards.

The Law Firm's role in the Stephensons' plot makes attorneys of the Law Firm necessary witnesses who will likely testify adversely to the Stephensons and is a separate ground for its disqualification under the attorney-witness rule. Rule of Professional Conduct 3.7; *Noval Williams Films LLC v. Branca*, 128 F.Supp.3d 781 (S.D.N.Y. 2015).

Plaintiffs also seek leave to move to compel the Law Firm to provide the Company with information and documents concerning the Law Firm's legal services and billing during the period it was representing the Company. The Company has been seeking such information since January. The Law Firm first gave the Company the "run around" and later flatly refused to provide such information,[8] thus necessitating a Court order to compel it to provide information to its client about the services it rendered while retained by that client.

Very truly yours,

David Sack

cc:  David Holahan, Esq.
     Dean Nicyper, Esq.

---

[6] [D]isqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility. ... Although in an extreme case a party's delay in making a motion for disqualification may be given some weight *see Marco v. Dulles*, 169 F.Supp. 622, 632 (S.D.N.Y. 1959) (nineteen year delay), such extenuating circumstances are not present here. The three-year gap between filing of the Emle action in 1968 and Patentex's motion to disqualify Rabin in 1971 is not extraordinary. *Emle*, supra, 478 F.2d at 574 (some citations omitted). *Accord GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 213 (2d Cir. 2010); *Chinese Auto. Distributors of Am. LLC v. Bricklin*, 2009 WL 47337, at *5 (S.D.N.Y. Jan. 8, 2009).

[7] *E.g.*, N.Y. Rules of Professional Conduct 1.7, 1.9, and 1.13; *Evans v. Artek Sys. Corp.*, 715 F.2d 788, (2nd Cir. 1983); *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973); *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953); *In re I Successor Corp.*, 321 B.R. 640, 650 (Bankr. S.D.N.Y. 2005).

[8] "In terminating a representation, a lawyer must take steps to the extent reasonably practicable to protect the client's interests, such as ... surrendering papers and property to which the client is entitled ... ." Restatement (Third) of the Law Governing Lawyers § 33 (2000).

3