UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
TROIKA MEDIA GROUP, INC.,                           :
TROIKA-MISSION HOLDINGS, INC.,                      : Civil Action No.:  19-cv-00145 (ER)
MISSIONCULTURE LLC, MISSION-MEDIA                   :
HOLDINGS LIMITED, MISSION-MEDIA LTD.,               :
and MISSION MEDIA USA INC.,                         :
                                                    :
                              Plaintiffs,           :
                                                    :
            -- against --                           :
                                                    :
NICOLA STEPHENSON, JAMES STEPHENSON,:
and ALLMAC LLC,                                     :
                                                    :
                              Defendants.           :
------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' APPLICATION FOR LAW FIRM'S**
**<u>DISQUALIFICATION AND PRODUCTION OF DOCUMENTS</u>**

## **TABLE OF CONTENTS**

PAGE

INTRODUCTION ………………………………………………………..      1

Facts …………………………………………………………………      4

I.  Disqualification is Required …………………………………….......      5

    A.  Concurrent Representation ………..………………………………      5

    B.  Successive Representation …………………………………………      6

    C.  No Waiver …………….……………………………………………      8

    D.  Ought to be a Witness …………………………………………      9

II. Production of Documents ………………………………………….      10

## TABLE OF AUTHORITIES

PAGE

*Brown & Williamson Tobacco Corp. v. Pataki,*
    152 F. Supp. 2d 276 (S.D.N.Y. 2001) ……………………………………………..   9

*Chinese Auto. Distributors of Am. LLC v. Bricklin,*
    2009 WL 47337, at *5 (S.D.N.Y. Jan. 8, 2009) …………………………………   9

*Cinema 5 Ltd. v. Cinerama, Inc.,*
    528 F.2d 1384 (2d Cir. 1975) …………………………………………………   5

*Emle Indus., Inc. v. Patentex, Inc.,*
    478 F.2d 562 (2d Cir. 1973) …………………………………………………..   7, 9

*Evans v. Artek Sys. Corp.,*
    715 F.2d 788 (2nd Cir. 1983) …………………………………………………   8

*First NBC Bank v. Murex, LLC,*
    259 F.Supp.3d at 38 (S.D.N.Y. 2017) ………………………………………….   5, 6

*Glacken v. Inc. Village of Freeport,*
    2010 WL 3943527 (E.D.N.Y. 2010) …………………………………………   7

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.,*
    618 F.3d 204 (2d Cir. 2010) …………………………………………………   5, 9

*Hull v. Celanese Corp.,*
    513 F.2d 568 (2d Cir. 1975) …………………………………………………   7

*In re I Successor Corp.,*
    321 B.R. 640 (Bankr. S.D.N.Y. 2005) ………………………………………   7

*In re Manshul Constr. Corp.,*
    1998 WL 405039 (S.D.N.Y. 1998) …………………………………………...   7

*Marco v. Dulles,*
    169 F.Supp. 622 (S.D.N.Y.1959) ……………………………………………..   8

*Merck Eprova AG v. Prothera, Inc.,*
    670 F.Supp.2d 201 (S.D.N.Y. 2009) …………………………………………   6

*Noval Williams Films LLC v. Branca,*
    128 F.Supp.3d 781 (S.D.N.Y. 2015) …………………………………………   9

ii

PAGE

*Schwed v. Gen. Elec. Co.,*
    990 F. Supp. 113 (N.D.N.Y. 1998) …………………………………………..    7

*St. Barnabas Hosp. v. New York City Health & Hosps. Corp.,*
    7 A.D.3d 83, 775 N.Y.S.2d 9 (1st Dept. 2004) …………………………………    9

*Strategem Development Corp. v. Heron Int'l, N.V.,*
    756 F.Supp. 789 (S.D.N.Y. 1991) ………………………………………………    5, 6

*T. C. Theatre Corp. v. Warner Bros. Pictures,*
    113 F. Supp. 265 (S.D.N.Y. 1953) ……………………………………………    7

*Talvy v. Am. Red Cross in Greater New York,*
    205 A.D.2d 143, 618 N.Y.S.2d 25 (1st Dept. 1994),
    *aff'd*, 87 N.Y.2d 826, 637 N.Y.S.2d 687 (1995) …………………………………    9

*The Fund of Funds, Ltd. v. Arthur Andersen & Co.,*
    567 F.2d 225 (2d Cir. 1977) ……………………………………………………..    7

*The NCK Organization Ltd. v. Bergman,*
    542 F.2d 128 (2d Cir. 1975) ……………………………………………………..    7

*United States v. Newman,*
    534 F. Supp. 1113 (S.D.N.Y. 1982),
    *aff'd,* 722 F.2d 729 (2d Cir. 1983) ……………………………………………    9

## Other Rules and Authority

N.Y. Rules of Professional Conduct 1.7 ………………………………………    2, 8

N.Y. Rules of Professional Conduct 1.9(a) ……………………………………    2, 7, 8

N.Y. Rules of Professional Conduct 1.13(b) …………………………………    2, 8

N.Y. Rules of Professional Conduct 3.7(b)(1) ………………………………..    9

Restatement (Third) of the Law Governing Lawyers § 33 (2000) ………………………    10

## INTRODUCTION

The undisputed facts in this case make clear that the Law Firm[1] breached its fiduciary duty and duty of loyalty to its client, the Company[2], and as such, has an unwaivable and uncondonable conflict of interest that mandates its disqualification in the parties' recently commenced arbitration.  Disqualification is particularly warranted given that the Company never knew until well after this lawsuit began of the Law Firm's duplicitous conduct and that it was actually working behind the Company's back in providing legal counsel to the Stephensons against it. Without this knowledge, and for other reasons discussed below, there was (and can be) no waiver of the Law Firm's wrongful conduct and conflict of interest.

Following the June 2018 closing of the transaction by which the Company acquired the Stephensons' shares in the Mission Entities (the "Acquisition"), the Law Firm continued to represent the Mission Entities.  However, until recently the Company never knew that at the very same time the Law Firm was representing it, after the Acquisition, the Law Firm was also secretly working against it by representing the Stephensons in their plot to regain ownership of the business they had just sold to the Company for $13 million.  Unbeknownst to the Company, following the closing and throughout the latter half of 2018, the Law Firm was providing counsel to the Stephensons – even going so far as to counsel them about bringing a meritless litigation against the Company as a negotiating ploy to help them recapture the business they just sold.  All the while, the Law Firm billed the Company for legal services which were misleadingly described

---

[1] Tannenbaum, Helpern, Syracuse and Hirschtritt, LLP (the "Law Firm").

[2] Plaintiffs are Troika Media Group, Inc. ("TMG"), Troika-Mission Holdings, Inc. ("TMH"), MissionCulture, LLC ("MissionCulture"), Mission-Media Holdings Ltd ("MMH"), Mission-Media Ltd ("MM Ltd"), and Mission-Media USA, Inc. ("MM USA").  TMG and TMH are sometimes collectively referred to as the "Troika Companies", while Mission Culture, MMH, MM Ltd, and MM USA, which were acquired from the defendants in June 2018, are sometimes collectively referred to as the "Mission Entities."  The Mission Entities are wholly owned subsidiaries of the Troika Companies. Individually or collectively the foregoing entities are sometimes referred to as the "Company."

1

to appear as unremarkable, "business as usual" type legal work.[3]

Rather than letting its client know of the Stephensons' planned *coup* – as it was obligated to do – the Law Firm surreptitiously aided and abetted the Stephensons in that unlawful effort.

It was not until April 2019, well after this litigation began, when the Law firm refused to provide basic information about the legal services it had performed while serving as the Company's counsel (Ex. Q), that the Company finally realized that the Law Firm was engaged in an impermissible, simultaneous and conflicted representation.  While the Company knew that the Law Firm had acted as counsel for the Mission Entities and the Stephensons in connection with the discrete Acquisition transaction that closed in June 2018, there was no conflict or divergence of interests between the Mission Entities and the Stephensons with respect to the consummation of that transaction.  However, the Company was never made aware of the critical fact that afterwards, while the Law Firm continued to represent the Company post-Acquisition, it was also simultaneously representing the Stephensons against it.  In that representation, the Law Firm was acting against the Company's best interests – helping the Stephensons circumvent their contractual obligations including by not turning over bank accounts to the Company, all as part of the Stephensons' greater hostile objective.

No written waiver allowing such simultaneous (and adverse) representation was ever obtained by the Law Firm as Rules 1.7, 1.9, and 1.13 of New York's Rules of Professional Conduct ("RPC") require.

The Law Firm's conflict of interest, breaches of its fiduciary duty and duty of loyalty to the Company were never waived by a writing or by conduct as the critical facts regarding its post-

---

[3] Compare the Law Firm's description of services accompanying its November 7, 2018 post-Acquisition invoice to the Company, Ex. E with Exs. F, G, and H revealing some of the actual work the Law Firm was performing for the Stephensons and against the Company during this timeframe.  "Ex." refers to exhibits to the accompanying affirmation of Bruce Robins.

2

closing simultaneous representation were never revealed.  The Law Firm compounded its

wrongdoing by misleadingly and deceptively describing the services it was performing (Ex. E)

and by later refusing to provide information about the concurrent services it was rendering, despite

repeated requests that it do so (Ex. Q).

The Law Firm's misconduct during the post-closing period cannot be ignored to allow it to

represent the Stephensons in this litigation (now in arbitration) – a litigation which the Law Firm

helped orchestrate and which it (and the Stephensons) knew was baseless but nevertheless

considered potentially valuable as leverage against the Company in any subsequent settlement

negotiations. Its legal advice for the Stephensons could not be any more damaging:

> Can't force a discussion about whether to allow you to buy back – during discussions in negs we wanted a mech which would allow us to buy bauc at a price.  TMG said no way. Didn't make it inot agreement so buyback would have to be a neg. *If we pursue a case for breach of contract, would be potential settlement in the lawsuit.*

> If said breach of contract *that's an expensive lawsuit* to pursue! No one wins on summary judgment. *Facts will be on Mission's side, but put pressure on them to settle for something.*

> Still going to be shareholders and on compete on purchase agreement would be pretty tight 4 year commencing on the closing date – won't compete. Yes, we agreed to it but you agreed to be solvent, pay us etc. Why should this be one way? Breach of the agreement both ways.

> No clean way out of this – going to be messy.

(Emphasis added) (Ex. F).

These are egregious acts of wrongdoing that place the Law Firm at the very heart of the

dispute between the parties and makes them necessary witnesses in the underlying dispute -- a

separate and non-waivable reason for its disqualification.

The Law Firm's undisclosed simultaneous representation makes it even more necessary

that the Law Firm provide the information requested by its client, namely, all documents regarding

its services during the post-closing period including with regard to the bogus insolvency proceeding the Stephensons commenced against the Mission Entities in the U.K. in January 2019.

## Facts

On January 7, 2019, the Company commenced this action, the salient facts of which were previously noted by the Court in granting the Company's application for a temporary restraining order.[4] When the Law Firm first appeared as attorneys for the Stephensons in this litigation in January, the Company had no knowledge that after the closing in June 2018 the Law Firm had also been representing the Stephensons against it.

Pursuant to a "So Ordered" stipulation (Docket No. 56), the parties have only recently, in May 2019, commenced the arbitration before JAMS. No arbitrator has been selected; the arbitration is stayed pending determination of this motion.

The Law Firm represented the Mission Entities' in connection with the Acquisition (see Ex. B) and since there was no divergence of interests and there was a commonality of objective, the Company had no objection to the Law Firm also representing the Stephensons for that limited purpose. See Law Firm invoices to MM USA, two dated May 31, 2018 and one dated June 28, 2018, Exs. C and D. After the closing, the Law Firm continued to represent and bill the Company. Ex. E is the Law Firm's invoice of November 7, 2018 addressed to MM USA with attached "Description of Services Rendered" addressed to "Mission Media USA, Inc./Troika."

The Company never knew that during this same post-closing period, the Law Firm was simultaneously rendering services to the Stephensons against the Company's interests. The Law Firm never notified the Company that it was working for the Stephensons after the closing, or that its engagement by the Mission Entities had ended, or sought a waiver of its conflict. Following

---

[4] See Transcript of January 7, 2019 Proceedings, annexed as Ex. A.

4

the closing, it billed the Company for what appeared to be ordinary, unremarkable legal services without disclosing the work it was performing for the Stephensons during the same period.

As shown below, the facts of this case require the Law Firm: (i) to be disqualified from representing the Stephensons in the arbitration and (ii) to produce their records concerning the services rendered during the post-closing period June 2018 through the commencement of this litigation in January 2019.

I        **Disqualification is Required**

### A.  Concurrent Representation

"It is prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client.  A concurrent representation implicates the duty of undivided loyalty which an attorney owes to each of his clients who are entitled to the lawyer's undivided allegiance and faithful, devoted service."[5]  That is exactly what the Law Firm did when, post-Acquisition, it represented both the Mission Entities and the Stephensons.  In such circumstances, a law firm cannot later sue one of its former concurrent clients, particularly where the representation of the two clients involved a related matter.  In such circumstance, the law firm has a "burden so heavy that it will rarely be met."[6]

The Law Firm cannot come close to meeting that burden here.  "One established ground for disqualification is concurrent representation, an attorney's simultaneous representation of one existing client in a matter adverse to another existing client. ... [C]oncurrent representation is *prima facie* improper ... ."[7]  "Because Epstein Becker had not clearly terminated its representation of [defendant's subsidiary]... by the time preparations for the instant litigation were begun, Epstein

---

[5]  *First NBC Bank v. Murex, LLC*, 259 F.Supp.3d 38, 57 (S.D.N.Y. 2017). (citations, internal quotations, omitted).

[6]  *Id* (citations, internal quotations, omitted).  *Accord GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204 (2d Cir. 2010); *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1975); *Strategem Development Corp. v. Heron Int'l, N.V.*, 756 F.Supp. 789 (S.D.N.Y. 1991).

[7]  *GSI*, *supra*, 618 F.3d at 209.

5

Becker is *per se* ineligible to represent [plaintiff] in this matter." *Strategem, supra*, 756 F.Supp. at 793 (citation omitted) (disqualifying law firm where "the Firm was clearly contemplating, if not actively planning, litigation against its client's parent corporation [while simultaneously representing the client]"); *Accord First NBC Bank, supra*, 259 F.Supp.3d at 68 ("That [the law firm] did not bring suit on [plaintiff's] behalf until after its representation of [defendant] had terminated does not change this result [that the firm must be disqualified under the strict concurrent representation standard]. The status of the relationship is assessed at the time the conflict arises ... .") (citation omitted); *Merck Eprova AG v. Prothera, Inc.*, 670 F.Supp.2d 201, 209 (S.D.N.Y. 2009) ("[T]he standard for concurrent representation applies even if the representation ceases prior to the filing of a disqualification motion.") (citations omitted).

The same *per se* rule applies here as the Law Firm too was providing counsel to the Stephensons to help them evade their contractual obligations and to prepare litigation against the Company, and even worse, a litigation it knew lacked merit.[8]

That is exactly what the Law Firm did when, post-Acquisition, it represented the Mission Entities and the Stephensons while their interests were diametrically opposed to each other.

These same long-standing legal and ethical considerations, stringently applied to a concurrent representation situation as here, require the Law Firm's disqualification in this case.

### B. Successive Representation

Even if there had never been a simultaneous representation and the Law Firm had only begun to represent the Stephensons after its representation of the Mission Entities ended "[a] lawyer's duty of absolute loyalty to his client's interests does not end with his retainer. ... [T]he rule that where any substantial relationship can be shown between the subject matter of a former

---

[8] The "hot potato" rule holds "that counsel may not avoid a disqualifying conflict by dropping the less desirable client like a 'hot potato'." *Id* (citations omitted).

representation and that of a subsequent adverse representation, the latter will be prohibited."[9]  This

rule is codified in RPC 1.9(a).[10]

The law has long recognized that an attorney's duty of loyalty to a client is sacrosanct:

"As confidentiality is critical to the attorney-client relationship and privilege, so also is the

proscription against professional apostasy. A client has the right to know that an attorney will not

change sides and become adverse on a matter substantially related to a matter previously entrusted

to that attorney."[11]  "While courts uniformly recognize the importance of a party's right to counsel

of his choice, that consideration must yield to considerations of ethics which run to the very

integrity of our judicial process."[12]

---

[9] *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953). *Accord Schwed v. Gen. Elec. Co.*, 990 F. Supp. 113, 115 (N.D.N.Y. 1998) ( "[A]n attorney has a continuing duty of loyalty to a client which constrains the attorney from representing another party whose interests are adverse to the interests of the former client.")

[10] Even where the attorney's representation of a second client adverse to the interests of a former client does not begin until after the attorney's relationship with the first client has ended, the attorney should be disqualified from representing the second client where, as here: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the  subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant  privileged information in the course of his prior representation of the client.

"Although generally considered to be a three part test, the third requirement is presumed if the first two prongs are met." *Glacken v. Inc. Village of Freeport*, 2010 WL 3943527, *3 (E.D.N.Y. 2010) (citations omitted). *Accord In Re Manshul, supra*; *The Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235-36 (2d Cir. 1977); *The NCK Organization Ltd. v. Bergman*, 542 F.2d 128, 134 (2d Cir. 1975); *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir. 1973) ("[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters . . . wherein the attorney previously represented him, the former client.  The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.") (citations, internal quotations and italics, omitted).

Here the email exchanges and draft letters make clear that the Law Firm was privy to the Company's confidential information as revealed by the subject matter of those communications.  As a matter of law, it does not matter whether any of the Company's confidential information was known to the Stephensons or could have been discovered from another source. "Even assuming that the directors and officers learned all of the confidential information in a firm's prior representation of the corporation, that does not justify allowing a firm to switch sides against its former client on that same matter." *In re I Successor, supra*, 321 B.R. at 656-57. *Accord NCK, supra,* 542 F.2d at 133); *Emle, supra*, 478 F.2d at 572-73 ("[T]he client's privilege in confidential information disclosed to his attorney is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources.") (citation, internal quotations, omitted).

[11] *In re I Successor Corp.*, 321 B.R. 640, 650 (Bankr. S.D.N.Y. 2005).

[12] *In re Manshul Constr. Corp.*, 1998 WL 405039, *4 (S.D.N.Y. 1998) (citations, internal quotations, omitted). *Accord  Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975) ("[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification.") (citation omitted); *In re I Successor, supra*, 321 B.R. at 647, 652 ("[T]he

Here, even under the less stringent substantial relationship test, and even if the Law Firm had ever formally terminated its relationship with the Mission Entities, which it did not, the Law Firm should be disqualified; there can be no doubt that there is a substantial relationship between its representation in connection with the Acquisition and thereafter and the parties' respective related obligations and alleged breaches, and the current arbitration.

## C.  No Waiver

The Law Firm's argument that the Company has somehow waived its conflict ignores the *per se* rule of concurrent representation, the severity of its disloyalty, as well as that RPC 1.7 (concurrent clients), 1.9 (former clients), and 1.13 (organizational attorneys)[13] require waivers of an attorney's conflict to be in writing.  The Law Firm made no effort to obtain a written waiver as it knew that if it disclosed what it was doing, its actions would never be accepted by any client..

Here there was no waiver by conduct either, nor could there be, since when the Law Firm appeared as counsel in connection with the TRO/Preliminary Injunction in January 2019, the Company was not aware that the Law Firm had acted against its interests by working with the Stephensons post-Acquisition as part of their attempt to retake the business while all the while the Law Firm was representing the Company and billing it for the Law Firm's services.

Moreover, as a matter of law, the Law Firm's conflict cannot be waived by a short delay[14]. This is particularly true since the Company was denied access to its computers until this Court

---

courts have made clear that any doubt is to be resolved in favor of disqualification."; "The appearance of impropriety is also what dictates that any doubt about disqualification should be resolved in favor of disqualification.") (citations, internal quotations, omitted).

[13]  It is beyond cavil that "[a] 'corporate attorney' owes a duty to act in accordance with the interests of the corporate entity itself.  His client is the corporation.. He may not serve the corporation in a particular matter and then represent a plaintiff in a suit against it or its officers in a substantially related matter." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2nd Cir. 1983)(citations omitted).  *See* RPC 1.13(b).

[14]  "[D]isqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility. . . . Although in an extreme case a party's delay in making a motion for disqualification may be given some weight *see Marco v. Dulles*, 169 F.Supp. 622, 632 (S.D.N.Y.1959) (nineteen year delay), such extenuating circumstances are not present here. The three-year gap between filing of the Emle action in 1968 and Patentex's motion to disqualify Rabin

issued a preliminary injunction (Docket No. 37) and only recently (in April 2019) did the Law

Firm make clear that it would not provide information about its activities that the Company

requested.  The Company simply had no way of knowing that the Law Firm after the closing, was

representing the Stephensons against it, even as it billed the Company for legal services rendered.

Moreover, with the Arbitration in its early stages, with no Arbitrator even selected and with the

Arbitration stayed, the Stephensons are not prejudiced in any way by the Law Firm's

disqualification at this early stage.[15]

### D.  Ought to be a Witness

An attorney should be disqualified where the opposing party intends to call him/her as a

witness and "can demonstrate … that the lawyer's testimony is necessary and that there exists a

substantial likelihood that the testimony would be prejudicial to the witness/advocate's client."

*Noval Williams Films LLC v. Branca*, 128 F.Supp.3d 781, 790-91 (S.D.N.Y. 2015).  *See,* RPC

3.7(b)(1).

Here, while representing the Mission Entities, the Law Firm aided and abetted the

Stephensons' plans to regain control of the Mission Entities, including by counseling them about

---

in 1971 is not extraordinary." *Emle, supra,* 478 F.2d at 574 (some citations omitted). *Accord GSI, supra,* 618 F.3d at 213 ("GSI argues that BabyCenter and J&J have forfeited any right to contest Blank Rome's representation … [because they] waited several months before objecting to Blank Rome as counsel. We reject GSI's argument because a party's delay in raising a conflict-of-interest objection does not prohibit a court from deciding whether a conflict of interest exists."); *Chinese Auto. Distributors of Am. LLC v. Bricklin,* 2009 WL 47337, at *5 (S.D.N.Y. Jan. 8, 2009) (disqualifying law firm, holding that delay in moving to disqualify would not justify allowing a continuing conflict, recognizing that "[t]his litigation is still at an early stage. Formal discovery has not yet begun. None of the defendants has answered or moved against the amended complaint. The fruits of the McCarter firm's factual investigation, legal research, and other work on the case can be passed on to successor counsel.")

[15] The waiver cases cited by the Law Firm (see Ex. R) are not to the contrary.  *Brown & Williamson Tobacco Corp. v. Pataki,* 152 F. Supp. 2d 276, 290 (S.D.N.Y. 2001) (two month delay generally not prejudicial); *United States v. Newman,* 534 F. Supp. 1113 (S.D.N.Y. 1982), *aff'd,* 722 F.2d 729 (2d Cir. 1983) (disqualification sought after 20 months delay denied on the merits, not on the basis of delay); *Talvy v. Am. Red Cross in Greater New York,* 205 A.D.2d 143, 149, 618 N.Y.S.2d 25, 29 (1st Dept.1994), *aff'd,* 87 N.Y.2d 826, 637 N.Y.S.2d 687 (1995) (disqualification in which there was more than a three year delay denied because of absence of attorney client relationship, the Court noting that a three year plus delay after note of issue would be prejudicial); *St. Barnabas Hosp. v. New York City Health & Hosps. Corp.,* 7 A.D.3d 83, 94, 775 N.Y.S.2d 9, 18 (1st Dept. 2004) (disqualification involving 14 month delay denied because where there was an informed written consent to the conflict).

bringing a lawsuit against the Company, and with regard to their refusing to turn over control of the Company's bank accounts to the Company, in violation of the Stephensons' contractual obligations.  Their testimony will be required to show the Stephensons wrongful conduct during the period of the Law Firm's simultaneous representation of the Company and the Stephensons. Because the Law Firm has first-hand, critical knowledge about the Stephensons' wrongdoing, its testimony on these issues will be necessary, and will undoubtedly be unfavorable to the Stephensons.  This presents a separate reason for the Law Firm to be disqualified.

**II      Production of Documents**

It is indeed a sorry state of affairs when a court order is required to compel a Law Firm to provide information to its client about the services it rendered while retained by that client, but that is the situation we are in.  The Law Firm has flatly refused to provide the Company with information the Company requested concerning the services the Law Firm rendered (Exs.C, D and E).  This is information to which the Company is entitled, and which the Law Firm is obligated to provide[16] particularly since the descriptions of services provided to the Company are misleading and deceptive.  The Law Firm should thus be required to provide the Company with the information the Company has requested including with respect to the sham insolvency proceeding that was commenced by the Stephensons in the United Kingdom.

Dated:  June 26, 2019

Respectfully submitted,
Feder Kaszovitz LLP, Attorneys for Plaintiffs

By: _____
Murray L. Skala
845 Third Avenue
New York, NY 10022
(212) 888-8200

---

[16] "(1) In terminating a representation, a lawyer must take steps to the extent reasonably practicable to protect the client's interests, such as ... surrendering papers and property to which the client is entitled ... ."  Restatement (Third) of the Law Governing Lawyers § 33 (2000).