## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

TROIKA MEDIA GROUP, INC., TROIKA
MISSION HOLDINGS, INC.,
MISSIONCULTURE LLC, MISSION-MEDIA
HOLDINGS LIMITED, MISSION-MEDIA
LTD., and MISSION MEDIA USA, INC.,

       Plaintiffs,

       -against-

NICOLA STEPHENSON, JAMES
STEPHENSON, and ALLMAC LLC,

       Defendants.

Index No. 19-cv-00145 (ER)

## DEFENDANTS NICOLA AND JAMES STEPHENSON'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL

David D. Holahan
Richard W. Trotter
TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
 (212) 508-6700
Holahan@thsh.com
Trotter@thsh.com

*Attorneys for Defendants Nicola Stephenson
and James Stephenson*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES........................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ................................................................................................................................3

I.     UNDER THE SECOND CIRCUIT'S "RESTRAINED APPROACH"
DISQUALIFICATION MOTIONS CARRY A HEAVY BURDEN..................................3

II.    PLAINTIFFS' DISQUALIFICATION MOTION IS BLATANTLY
TACTICAL AND ENORMOUSLY PREJUDICIAL TO
THE STEPHENSONS ......................................................................................................4

III.   PLAINTIFFS' DISQUALIFICATION MOTION FAILS BECAUSE THSH
NEVER REPRESENTED THE "COMPANY" AND THERE IS NO
RISK OF TAINT ..............................................................................................................6

     A.    There is No Conflict Because THSH Always Represented
the Stephensons...........................................................................................................7

     B.    Plaintiffs do not Even Try to Explain how they Could be
Prejudiced at Trial......................................................................................................9

IV.   PLAINTIFFS' CLAIM OF CONCURRENT REPRESENTATION IS FALSE ...............9

CONCLUSION............................................................................................................................10

<u>T</u><u>ABLE OF</u> <u>A</u><u>UTHORITIES</u>

**<u>Cases</u>**                                                                                                       **<u>Page(s)</u>**

*Bd. Of Ed. Of N.Y. v. Nyquist*,
590 F.2d 1241 (2d Cir. 1979)........................................................................................6, 9

*Brown & Williamson Tobacco Corp. v. Pataki*,
152 F. Supp. 2d 276 (S.D.N.Y. 2001)...........................................................................4, 6

*Commercial Union Ins., Co. v. Marco Intern. Corp.*,
75 F. Supp. 2d 108 (S.D.N.Y. 1999).............................................................................3, 9

*Copantitla v. Fiskardo Estiatorio, Inc.*,
788 F. Supp. 2d 253 (S.D.N.Y. 2015).......................................................................2, 3, 6

*European Cmty. v. RJR Nabisco, Inc.*,
134 F. Supp. 2d 297 (E.D.N.Y. 2001) ..............................................................................3

*HLP Properties, LLC v. Consol. Edison Co. of N.Y.*,
2014 WL 528926 (S.D.N.Y. 2014).....................................................................................6

*Persh v. Peterson*,
2015 WL 5773566 (S.D.N.Y. Oct. 2, 2015). .............................................................2, 3, 9

*Revise Clothing, Inc. v. Joe's Heans Subsidiary, Inc.*,
687 F, Supp. 2d 381 (S.D.N.Y. 2010)..........................................................................6, 10

*Rocchigiani v. World Boxing Counsel*,
82 F. Supp. 2d 182 (S.D.N.Y. 2000)................................................................................10

*Scantek Med., Inc. v. Sabella*,
693 F. Supp. 2d 235 (S.D.N.Y. 2008)................................................................................3

*Universal Studios, Inc. v. Reimerdes*,
98 F. Supp. 2d 449 (S.D.N.Y. 2000)............................................................................. 4, 6

Defendants Nicola Stephenson and James Stephenson (the "Stephensons") submit this Memorandum of Law in Opposition to the Motion by Plaintiffs[1] to disqualify Tannenbaum Helpern Syracuse & Hirschtritt LLP ("THSH") (ECF No. 63, the "Disqualification Motion").

## PRELIMINARY STATEMENT

Plaintiffs initiated this action on January 7, 2019 with full knowledge that THSH would be representing the Stephensons.  Plaintiffs filed three motions for injunctive relief, two motions for sanctions, two complaints and two requests for arbitration without ever so much as uttering the words "conflict" or "disqualification."  And yet, on April 25, 2019—four and a half months into this dispute, and two days after the Stephensons rejected Plaintiffs' offer to mediate— Plaintiffs' raised the issue of conflicts for the first time. Plaintiffs' Disqualification Motion is so transparently tactical, and so immensely prejudicial, that it should be dead on arrival.

As the Court noted during the conference on June 14, 2019, THSH appeared as counsel for the Stephensons on the first day of this dispute.  (Holahan Decl.[2] ¶ 6.)  THSH's appearance came as no surprise to Plaintiffs' prior counsel Withers Bergman LLP ("Withers"), as THSH had represented the Stephensons in the sale of their business to Troika and negotiated the Stephensons' employment agreements with Troika and Mission USA.  In a December 6, 2018 letter to Withers and Troika's in-house counsel, THSH referred to itself as "counsel to James and Nicola Stephenson." (Rieger Decl.[3] ¶ 72, Ex. C). Plaintiffs' pleadings also show that they knew of THSH's role well before Plaintiffs initiated this action.  (Holahan Decl. Ex. A ¶ 40; D ¶ 52.)

And yet, Plaintiffs waited until April 25, 2019 to raise THSH's supposed "conflict" for

---

[1] Troika Media Group, Inc. ("Troika"), Troika Mission Holdings, Inc. ("Troika Holdings"), MissionCulture LLC ("Mission Culture"), Mission-Media Holdings, Ltd. ("Mission Holdings"), Mission Media Ltd. ("Mission Limited"), and Mission Media USA, Inc. ("Mission USA", together Troika, Troika Holdings, Mission Culture, Mission Holdings and Mission Limited, the "Plaintiffs").

[2] Declaration of David D. Holahan dated July 5, 2019 and submitted herewith.

[3] Declaration of James R. Rieger, dated July 3, 2019 and submitted herewith.

the first time.  Plaintiffs' explanation for their delay is refuted by the TRO entered by this Court on the first day of this dispute.  Plaintiffs claim "the Company was denied access to its computers . . . until this Court issued a preliminary injunction." (Pl. Br.[4] at 8.)  However, the TRO provided **the exact same relief** as the preliminary injunction which Plaintiffs misleadingly claim gave them access to their computers for the first time. (Holahan Decl. Ex. B.)

The real impetus for the Disqualification Motion was the Stephensons' rejection of Plaintiffs' offer to mediate on April 22. The Stephensons had agreed to mediation, but based on discussions between THSH and Plaintiffs' new counsel Murray Skala ("Skala"), they determined that mediation would not be productive. On April 22, THSH informed Skala of the Stephensons' decision, on April 23 Skala asked the THSH to consent to the filing of a letter with the Court, and on April 24 his associate filed a "Joint Letter Motion" to proceed with arbitration.  (Holahan Decl. ¶¶ 22-24, Ex. H.) The next day, on April 25, Skala raised THSH's supposed conflict for the first time.  (Holahan Decl. ¶ 29 Ex. J.)  Disqualification motions are "often interposed for tactical reasons," and Plaintiffs' Disqualification Motion is a perfect example of why they carry a heavy burden. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2015).

To the extent the Court reaches the substance of Plaintiffs' Disqualification Motion, it will quickly conclude that THSH's supposed conflicts are nonexistent, and that Plaintiffs are unable to show the kind of taint that would justify THSH's disqualification.  Under the Second Circuit's restrained approach, courts disfavor disqualification motions and subject them to high evidentiary standards.  *See Persh v. Peterson*, 2015 WL 5773566, at *3 (S.D.N.Y. Oct. 2, 2015). The Stephensons have always been THSH's real client.  THSH helped negotiate the sale of the Stephensons' shares in the Mission companies to Troika, provided them with legal advice when

---

[4] Plaintiffs' Memorandum of Law in Support of Disqualification Motion (ECF No. 65.)

their relationship with Plaintiffs soured, and now defend them in this litigation.   Plaintiffs' claim that THSH simultaneously and/or concurrently represented the Stephensons and "the Company" (which they misleadingly define to include all Plaintiff entities) is patently false.   Moreover, Plaintiffs' invocation of a THSH engagement letter referencing Mission Limited demonstrates Plaintiffs' gross misunderstanding of the facts, harkening back to what Judge Kaplan has dubbed as "empty formalism." *Commercial Union Ins., Co. v. Marco Intern. Corp*., 75 F. Supp. 2d 108, 113 (S.D.N.Y. 1999). Plaintiffs' disqualification motion should be denied.[5]

## ARGUMENT

**I.     UNDER THE SECOND CIRCUIT'S "RESTRAINED APPROACH" DISQUALIFICATION MOTIONS CARRY A HEAVY BURDEN**

"Courts in this Circuit show considerable reluctance to disqualify attorneys because disqualification has an immediate adverse effect on the client by separating him from counsel of his choice and disqualification motions are often interposed for tactical reasons." *Persh*, 2015 WL 5773566, at *3. Indeed, "[c]ourts are [] chary to grant motions to disqualify because such motions impinge on a party's right to employ the counsel of its choice" and because they "inevitably result in delay and added expense." *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008). Disqualification motions are therefore "subjected to a high standard of proof."  *Copantitla*, 788 F. Supp. 2d at 281. This standard, referred to as the Second Circuit's "restrained approach," provides that "not every violation of a disciplinary rule will necessary lead to disqualification." *Id.; European Cmty. v. RJR Nabisco, Inc*., 134 F. Supp. 2d 297 (E.D.N.Y. 2001).

---

[5] For a full statement of the facts, the Stephensons refer to the declarations and exhibits submitted herewith.

II.     **PLAINTIFFS' DISQUALIFICATION MOTION IS BLATANTLY TACTICAL
        AND ENORMOUSLY PREJUDICIAL TO THE STEPHENSONS**

Courts deny motions to disqualify where the timing and context suggest a clearly tactical

motive. *See e.g.*, *Universal Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000)

(movant was "motivated at least partly by tactical considerations" because he "knew of the

conflict as early as March 14 but did not even raise the issue with the firm until April 12.");

*Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276, 290 (S.D.N.Y. 2001)

(finding "hint of tactical maneuvering in the filing of [the disqualification] motion because the

movant the movant "had notice of [the firm's] representation….in October 2000, yet…chose to

pursue expedited proceedings at the outset and only informed [the firm] of its intent to file the

motion to disqualify in December 2000."). As this Court correctly observed at the pre-motion

conference, THSH appeared and argued on the **first day** this action was commenced:

> I just don't see any way Plaintiffs can get away from the fact that they were on
> notice from day one that the Stephensons were represented by the Tannenbaum
> Firm. That should have raised an issue. That's first year law school issue spotter.
> That should have raised an issue and it should have been discussed at the time.

(Holahan Decl. Ex. F 23:21-24:6.)

Nevertheless, Plaintiffs plowed forward with an expedited campaign against the

Stephensons, including three requests for temporary and preliminary injunctive relief (ECF Nos.

3, 20, 28); two motions for monetary sanctions and pre-motion discovery (ECF Nos. 20, 28); a

30-page original complaint (ECF No. 1); a 50-page amended complaint (ECF No. 47); and two

lengthy hearings on January 7 (ECF No. 13) and February 11 (ECF No. 48). Yet not once did

Plaintiffs even whisper the word conflict.

4

Plaintiffs offer a variety of provable falsehoods in an attempt to justify their delay.[6] Plaintiffs argue that when THSH "appeared as counsel in connection with the TRO/Preliminary Injunction in January 2019, the Company was not aware that the Law Firm had acted against its interests by working with the Stephensons post-Acquisition[.]" (Pl. Br. at 8.) However, Plaintiffs began hurling their accusations against THSH **in their initial complaint**. (*See* Holahan Decl. Ex. A ¶ 43 ("His email included, as cc recipients, the Stephenson Defendants' New York attorneys, implying that…these attorneys were at least aware of NS's criminal and tortious activity").)

Equally ludicrous is Plaintiffs' claim that they did not have access to their computer systems "until the Court issued a preliminary injunction" on February 13, 2019 (Pl. Br. at 8-9), which ignores the **identically-worded TRO** that preceded the injunction. (Holahan Decl. Ex. B.) The notion that Plaintiffs did not have access to their computer systems until the preliminary injunction was issued is further belied by the sworn affidavit of Chris Broderick, an officer of Plaintiffs, that was filed on February 5, 2019—one week before the preliminary injunction was entered—stating that Broderick had found an email from Nicola Stephenson. (Holahan Decl. Ex. F, at 23:5-18.) Mr. Broderick's admission conclusively establishes that not only did Plaintiffs have access to their computer systems and the Stephensons' emails **before** the preliminary injunction was entered, but that Plaintiffs were combing through the Stephensons' emails as early as February 5, 2019—rendering Plaintiffs' counsel's statement that Plaintiff did not

---

[6] Plaintiffs argue that it would have been impossible to waive any conflict because various New York Rules of Professional Conduct require written waivers. (Pl. Op. at 8.) Plaintiffs are wrong. The actual text of the rules they cite, which Plaintiffs omit from their motion, demonstrate those rules' complete lack of applicability and their singular concern with attorneys that truly "switch sides." *See* RPC 1.7 (applying only where "a reasonable lawyer would conclude" that a representation "will involve the lawyer in representing differing interest," or that there is a "significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."); RPC 1.13 (omitting any reference to written waivers but noting in Comment 12 that "a lawyer for an organization may also represent a principal officer or major shareholder, subject to the provisions of Rule 1.7."); RPC 1.9, Comment 2 ("The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.").

conduct a "deep dive" into the Stephensons' emails until April 2019 manifestly false.[7]  (*Id.* at 4:14-18.)  Plaintiffs' motion is nothing more than a blatant tactical maneuver and should be denied on that basis alone. *See Universal Studios, Inc.*, 98 F. Supp. 2d at 455; *Brown & Williamson Tobacco Corp*., 152 F. Supp. 2d at 290.

Moreover, disqualification would substantially prejudice the Stephensons by depriving them of their counsel of choice, imposing additional financial burdens, and delaying adjudication of this dispute.  *See HLP Properties, LLC v. Consol. Edison Co. of N.Y.*, 2014 WL 528926, at *6 (S.D.N.Y. 2014); *Copantitla*, 788 F. Supp. 2d at 281 The Stephensons have been forced to incur more than $200,000 in legal fees fending off Plaintiffs' months-long campaign of expedited motion practice. (Holahan Decl. ¶ 33.) As a result of this work, THSH has developed a deep familiarity with the factual, legal and procedural issues of this case that could not be easily (or cheaply) replicated by a new firm. Of course, that is the point—Plaintiff's filed their Disqualification Motion after the Court twice ordered the parties to arbitration, and after the Stephensons declined to mediate this dispute. (Holahan Decl. Exs. G, I.)

## III.     PLAINTIFFS' DISQUALIFICATION MOTION FAILS BECAUSE THSH NEVER REPRESENTED THE "COMPANY" AND THERE IS NO RISK OF TAINT

To warrant disqualification under the substantial relationship test, Plaintiffs must present clear evidence that they were a former client of THSH; and that THSH would have access to privileged information that could taint the trial of this action.[8] *Revise Clothing, Inc. v. Joe's Heans Subsidiary, Inc.,* 687 F, Supp. 2d 381, 389 (S.D.N.Y. 2010); *Bd. Of Ed. Of N.Y. v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979). Plaintiffs cannot satisfy this standard because the

---

[7] Skala has scant credibility for another reason: in response to a direct question at oral argument from the Court, he stated unequivocally that THSH instructed the Stephensons in an email to file a "frivolous" complaint against Plaintiffs. Tellingly, however, Plaintiffs do not attach a single email to their motion papers even remotely supporting that specious assertion. (Holahan Dec. Ex. F 12:3-6.)

[8] Plaintiffs all but ignore this standard, and instead repeat baseless allegations of THSH's supposed breach of its

Disqualification Motion rests on a provably false premise – that THSH represented "the Company" while, unbeknownst to Plaintiffs, also representing the Stephensons. (Pl. Br. at 1 n2.) The evidence shows that THSH openly represented the Stephensons before and after the sale of their shares in the Mission companies to Troika, and that Troika's attorneys were fully aware of this fact.  As a result, Plaintiffs are unable to establish two essential elements of the "successive representation test" which governs the Disqualification Motion.

### A.      There is No Conflict Because THSH Always Represented the Stephensons

Prior to the sale of their interest in the Mission companies, the Stephensons owned 100 percent of the equity in all Mission-related entities, including Mission USA and Mission Limited, and were the sole directors of all the Mission companies. (N. Stephenson Decl.[9] ¶¶ 3-6.) When the Stephensons decided to sell the Mission companies to Troika, they entered into a two-party, buyer and seller, transaction. (Id. ¶¶ 13-14; Rieger Decl. ¶ 19.)  The sale agreements defined the "Buyer" as Troika Holdings, a wholly owned subsidiary of Troika, and the "Sellers" as the Stephensons. (Rieger Decl. Ex. A at 1, 2, 12.) The pre-sale Mission entities were not parties to the sale agreements because they were the assets being sold.  (*See id.* at 1, 23-24.) Because the Stephensons were the only seller-side parties to the agreements, the sale agreements specifically identified THSH as counsel for the Stephensons, not the Mission companies.  (*See id.* at 101.)  None of the parties to the transaction or their counsel ever suggested that the Mission companies retain independent counsel. (Rieger Decl. ¶ 18.)

On May 21, 2018, the Stephensons retained THSH to represent them in the sale. (N. Stephenson Decl. ¶¶ 7-8.) The engagement letter made reference to Mission Limited, but the Stephensons, as the sole owners and directors of the Mission companies, were the real parties in

---

duty of loyalty to "the Company," which erroneous and irrelevant.

7

interest.  (N. Stephenson Decl. ¶¶ 11-12; Rieger Decl. ¶ 13.) And while THSH sent invoices for its work in connection with the pre-sale negotiation and drafting of the sale agreements to Mission USA, the real costs of the transaction were borne by the Stephensons – as the agreements required them to reimburse the companies for the vast majority of the transaction costs, including THSH's attorneys' fees.   (Rieger Decl. ¶¶ 35-42, Ex. A § 9.02.) THSH mistakenly sent one invoice to Mission USA for work performed after the sale, but that invoice was never paid, and THSH never made any demands for payment.  (Rieger Decl. ¶¶ 61-65.)

THSH continued to represent the Stephensons after the sale, and never provided advice to any Plaintiff in this action. (Rieger Decl. ¶¶ 43-60.)  The emails attached to the Disqualification Motion prove that THSH's only clients were the Stephensons.  For example, Exhibit J to the Robbins Affirm.[10] is an email from James Rieger advising the Stephensons on the risks of providing the Mission companies with a personal loan, and stating that his goal was to "protect" the Stephensons. Contrary to Plaintiffs' conveniently timed outrage, Rieger sent Troika's in-house and outside counsel numerous correspondence in which he **explicitly identified himself as counsel for the Stephensons**.  (*See* Rieger Decl. Exs. B-D.) Neither Troika nor Withers objected to Rieger's representation of the Stephensons.  (Rieger Decl. ¶¶ 71, 75.)

Plaintiffs distort a passing reference to Mission Limited in the THSH engagement letter, and a handful of invoices that were either: (1) indirectly paid by the Stephensons; or (2) were mistakenly sent to Mission USA and never paid.  (Rieger Decl. ¶¶ 61-65.)  Judge Kaplan rejected similar arguments in *Commercial Union Ins. Co*., finding that the movant was a prior client in name only, and that the party opposing disqualification had actual "control over the prosecution, settlement or dismissal of the matter." 75 F. Supp. 2d at 112. Judge Kaplan concluded that the

---

[9] Declaration of Nicola Stephenson dated July 3, 2019 and submitted herewith.

law firm only represented the movant "as a matter of form," and that the movant's arguments amounted to little more than "empty formalism." *Id*. at 111, 113. The same is true here.

**B.**     **Plaintiffs do not Even Try to Explain how they Could be Prejudiced at Trial**

Even if Plaintiffs were able to establish a conflict (they cannot), they would still be required to show that the Stephensons have "gained an unfair advantage through access to privileged information." *Bd. Of Ed. Of N.Y. v. Nyquist*, 590 F.2d at 1247; *Persh*, 2015 WL 5773566, at *6. For all their baseless hyperbole, Plaintiffs fail to offer a single piece of evidence to establish that Mission Limited, or any other Plaintiff, provided THSH with confidential or privileged information. The question of whether a potential conflict has the potential to taint the current proceeding is the very essence of a motion to disqualify, and yet Plaintiffs have failed to address this element in any meaningful way.[11]

**IV.**     **PLAINTIFFS' CLAIM OF CONCURRENT REPRESENTATION IS FALSE**

Unable to satisfy the successive relationship test, Plaintiffs try to manufacture the appearance that THSH represented "the Company" and the Stephensons. Plaintiffs' attempt to invoke a more favorable standard for disqualification fails because: (1) THSH never represented the Company; (2) to the extent THSH nominally represented Mission Limited, that representation ended in June of 2018; and (3) Plaintiffs cannot show any risk of taint.

To accept Plaintiffs' argument of "simultaneous representation" would be to believe that, when Withers and THSH were negotiating the sale and exchanging adversarial correspondence, they were doing so as co-counsel for Plaintiffs and the Stephensons. Such a proposition defies

---

[10] Affirmation of Bruce Robins, dated June 28, 2019 (ECF No. 64).

[11] Plaintiffs "witness-advocate" argument fails for all the same reasons set forth herein. Moreover, Plaintiffs' argument fails because: (1) all of THSH's communications with the Stephensons are privileged (including those improperly submitted in support of the Disqualification Motion); and (2) Plaintiffs cannot show that the testimony of any THSH attorney would be necessary in this action. *See Persh*, 2015 WL 5772566, at *3-4.

belief.  Moreover, to the extent THSH represented Mission Limited in name, that representation ended on June 29, 2018. "When an attorney-client relationship ends depends largely on the purpose for which it was created." *Revise Clothing, Inc.*, 687 F. Supp. 2d at 389.   The engagement letter upon which Plaintiffs rely provides that THSH's representation "in connection with a sale of the business to Troika," which closed on June 28, 2018.  (Robins Affirm. Ex. B.)  So, to the extent THSH represented Mission Limited in any real way (and it did not), that representation ended more than six months prior to Plaintiffs' initiation of this action. *See Rocchigiani v. World Boxing Counsel*, 82 F. Supp. 2d 182, 184 (S.D.N.Y. 2000) (concurrent representation test did not apply where no simultaneous representation at the start of litigation).[12]

## CONCLUSION

The Court should deny the Disqualification Motion in its entirety.

Dated: July 3, 2019

TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP
By: ____/s/ David D. Holahan_____
     David D. Holahan
     Richard W. Trotter
900 Third Avenue
New York, New York 10022
Phone No. (212) 508-6700
Holahan@thsh.com and
Trotter@thsh.com
*Attorneys for Defendants Nicola and*
*James Stephenson*

---

[12] Even if the test concurrent representation is applied, Plaintiffs motion should still be denied since there is no suggestion in the record that arbitration will be tainted.   Plaintiffs' argument that the test for concurrent representation results in per se disqualification and a heavy burden that will almost never be met is belied by the actual case law, including a decision by Judge Engelmayer from just three weeks ago. *See Maiden Lane Hosp. Grp. LLC v. Beck by David Companies, Inc*., No. 18 CIV. 7476, 2019 WL 2417253, at *3 (S.D.N.Y. June 10, 2019) ("The Court finds that the concurrent representation of MLHG and Potentis will not taint the underlying trial and does not necessitate disqualification").