UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

TROIKA MEDIA GROUP, INC., TROIKA-MISSION
HOLDINGS, INC., MISSIONCULTURE LLC, MISSION-
MISSION-MEDIA HOLDINGS LIMITED, MISSION-
MEDIA LTD.,and MISSION MEDIA USA INC.,

Civil Action No.:
19-cv-00145 (ER)

Plaintiffs,

-- against --

NICOLA STEPHENSON, JAMES STEPHENSON,
and ALLMAC LLC,

Defendants.
-----------------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW

Respectfully submitted,

Feder Kaszovitz, LLP
Attorneys for the Plaintiffs

By: _____
Murray L. Skala, Esq.
845 Third Avenue
New York, N.Y. 10022-6601
(212) 888-8200
mskala@fedkas.com

I. <u>Concurrent Representation</u>: Mr. Rieger contends that the November 7, 2018 invoice to Mission Media USA, Inc. and the accompanying Description of Services (Ex.E to B. Robins Aff.) (ECF No. 64) was a "mistake," and therefore there was no concurrent representation – its Engagement Letter[1] and invoices notwithstanding (Exs.B, C, D, and E to B. Robins Aff.).[2] No details of how such alleged mistake happened are provided. (See accompanying affirmation of Michael Tenore) ("Tenore Aff.").

The Description identifies the Law Firm's communications in October 2018 with "Helen" (Helen Croft) who, by her 2016 Service Agreement (Ex. A, Tenore Aff.), was designated a director and, both before and after the June 2018 acquisition, was Chief Operating Officer and counsel to the plaintiff Mission Entities, who continued to be her Employer. Following the acquisition, Helen was responsible for general corporate matters involving the Mission Entities including with respect to post-closing acquisition matters.

At no time did the Company have any knowledge or reason to believe that Helen was working with the Law Firm adverse to the Company's best interests -- that she and the Law Firm were apparently plotting with the Stephensons against the Company. That not only violated her fiduciary duties and duties of confidentiality (aided and abetted by the Law Firm) but violated her contractual duties as well – duties which specifically required her to report any disloyalty to the Company. (Tenore Aff. fn. 1 Ex. A, §3.1.10).

II. <u>Professional and Tortious Misconduct</u>: If the Law Firm was not providing the ordinary, "business as usual" post-acquisition type services for the Company (as it described)

---

[1] The Law Firm's cavalier and dismissive treatment of its own engagement letter contravenes its legal significance and the requirement that it be with its "client." 22 NYCRR 1215.1. Under the Law Firm's contention, it not only violated this rule but billed the Mission Entities for work not performed for them.

[2] *Maiden Lane v. Beck*, 2019 WL 2417253 (S.D.N.Y. 2019) is inapposite since neither of the concurrent clients, who were co-plaintiffs in the case, sought to disqualify the law firm. Rather, it was the non-client defendant that sought disqualification. Unlike here, "[the two plaintiffs'] interests [are not] irreconcilably adverse. Rather, each, at core, has a predominant interest—synchronous with each other's... ." 2019 WL 2417253 at *3.

what was it doing dealing directly with a senior Company executive against the Company's interests? The Law Firm had no right to aid and abet Helen to violate her fiduciary and contractual duties in order to obtain confidential information and to plot against the Company's best interests.[3] Also, if as it now belatedly claims, the Law Firm was not continuing to represent the Company post-closing, again their Engagement Letter and invoices notwithstanding, they would not have been able to deal with Helen directly on acquisition matters without consent of the Withers Law Firm which they knew had represented Troika in the acquisition.[4]

III.  Successor Representation: The contention that the Law Firm never represented the Mission Entities is clearly belied by the Engagement Letter and its invoices. If the Mission Entities had no interest in the acquisition transaction there would have been no legitimate basis for their paying the Law Firm substantial legal fees and transaction expenses. The cash would have remained as an asset on their balance sheets when acquired by Troika. Consistent with the Engagement Letter, as counsel for the Mission Entities, the Law Firm had direct duties to its client, the Mission Entities, including making sure that their assets were not being pilfered, that there were no issues with respect to their employees, landlord, creditors, etc., that they were properly organized, qualified and operating in accordance with law.[5]

IV.  No Waiver: When the Company requested back-up information in January 2018 about the Law Firm's services and invoices (Ex. Q), there was no reason to believe that the Law Firm worked with Helen with regard to anything but normal (non-adversarial) post acquisition activities.

---

[3] RPC 8.4 provides that "A lawyer or law firm shall not: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation ... ."

[4] RPC 4.2(a) bars an attorney from communicating with a represented party. *See generally Trimper v. Terminix Int'l Co.*, 82 F. Supp.2d 1 (N.D.N.Y. 2000); *Anonymous v. Anonymous*, 62 Misc.3d 289, 87 N.Y.S.3d 487 (Sup.Nass. 2018).

[5] The Law Firm ignores that Helen was a contractually designated director of Mission Limited (Tenore Aff. fn. 1, Ex. A §3.1.1) thus contradicting that the defendants were the only persons interested in the Mission Entities.

Had the Company known that the Law Firm was conspiring with the Stephensons together *with Helen,*[6] in a dispute directly related to the acquisition, it would have immediately objected to the Law Firm's representation of the Stephensons (and fired Helen and the Stephensons on the spot). Certainly, without this knowledge there could never be a knowing and intelligent waiver of the Law Firm's conflict of interest or of its clandestine tortious and professional misconduct -- both of which requires its disqualification. The "argument that Plaintiffs waived their right to assert an ethical violation based on the passage of time finds no support in the case law or common sense. Time does not heal all wounds, nor make good a breach of the attorney-client relationship." *Trimper, supra,* 82 F. Supp.2d at 5. And this is especially true where the Company did not, until well after the lawsuit started, have the pertinent facts.

V. Ought To Be A Witness: Given the Law Firm's active role in the concealed breaches of fiduciary duty and knowledge of the motives, origins and objectives of the dispute between the parties, they undoubtedly will be a key witness in the arbitration.[7]

VI. Production of Billing Records: Under the circumstances, the Law Firm should be required to produce the billing records demanded by plaintiffs.

X:/MLS/Troika/Reply Memo of Law 7.11.19

---

[6] Significantly, the opposition papers make no mention whatsoever of Helen or its direct dealings with her while she was presumed to be a trusted senior level executive of the acquired Mission Entities.

[7] The contention that the Law Firm cannot be a witness (Opp. MOL p. 9, fn. 11) because of privilege is wrong given that communications were on the *Company's server* and by the fact that, according to the Law Firm, Helen was not their client.