

The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY  10018-1405
212.808.2700
Fax 212.286.9806

Robyn R. English-Mezzino
englishr@pepperlaw.com

May 26, 2020

RE:   Troika v. Stephenson, No. 19-cv-00145 (ER)

Dear Judge Ramos:

This firm represents Mishcon de Reya LLP ("Mishcon UK") in connection with the Order to Show Cause and related subpoena proceedings that were vacated by Docket Entry 93 in this action.  Mishcon UK supplies this letter pursuant to Rule 2A(ii) of Your Honor's Individual Rules.  As set forth below, Troika should not be permitted to re-file its OSC because the motion would be futile.  It was served defectively and is aimed at a party beyond this Court's jurisdiction.  It would be a futile effort even were these defects somehow cured, because Mishcon is barred by English law from producing any responsive documents, and this position should be respected under the Second Circuit's "comity" jurisprudence.

A.   Relevant Facts

Plaintiffs omit in their telling the very first document in this dispute.  On January 23, 2020, in a document not attached to the multi-exhibit Sack Declaration in support of the OSC and so attached here as Exhibit 1, Mr. Sack sent a letter on behalf of the Mission and Troika companies.  The January 23 letter is addressed to "Mishcon de Reya LLP" in New York City with a cc to "Mishcon de Reya LLP" in London.  The letter claims that the recipients "acted as counsel to one or more of the Mission companies" in the 2018 acquisition by Troika of Mission and in 2019 English insolvency proceedings, and asks the recipients to produce all their files in the English insolvency proceedings.

Mishcon UK, an entity organized under the laws of England and Wales with its principal place of business in England, responded promptly from London on February 4, 2020.  Sack Dec. Ex. 9.  The firm stated that it had "acted for certain directors of the Mission group of companies personally in relation to their individual capacities as directors" rather than for Mission itself; that as to that matter, "all of those files and letters will remain private and confidential as well as legally privileged;" and that accordingly, "we will not be disclosing anything in relation to those matters."  Mishcon UK's February 4 letter made clear that there were two different Mishcon entities: the letter is signed "Mishcon de Reya LLP" on that firm's letterhead, while the bottom separately references "New York:  Mishcon de Reya New York LLP" ("Mishcon NY").  Plaintiffs were thus on notice since at least February 4 of the correct name of the New York entity.

| Philadelphia | Boston | Washington, D.C. | Los Angeles | New York | Pittsburgh | Detroit |
|---|---|---|---|---|---|---|
| Berwyn | Harrisburg | Orange County | Princeton | Rochester | Silicon Valley | Wilmington |

www.pepperlaw.com

Page 2

<u>Plaintiffs did not respond to the February 4 letter</u>.  Instead,

- On February 14, Plaintiffs obtained a Summons from Arbitrator Pollack, addressed to "Mishcon de Reya LLP, 122 West 27th street, 10th Floor, New York NY 1001."

- On February 18, Plaintiffs served the Summons on Mishcon NY at the West 27th Street address.

- On March 12, Plaintiffs obtained an Order ("the Default Order") from the Arbitrator. Sack Dec. Ex. 6, at 23.  The Default Order defines  "Mishcon de Reya LLP" as "the Mishcon firm," then states that "the Mishcon firm" was served on February 18.

- On March 13, after ignoring Mishcon UK since its February 4 response, Plaintiffs copied Mishcon UK on their letter to Mishcon NY enclosing a copy of the Default Order.

In sum, Plaintiffs ignored the answer they obtained from Mishcon UK on February 4, and instead of proceeding through proper legal channels in the UK, served a misnamed summons on a different US entity, obtained a default, and only then turned back to Mishcon UK.

B.    <u>No Jurisdiction over Mishcon UK</u>

Plaintiffs' motion is directed at Mishcon UK but there is no jurisdiction over this entity.  *First*, Plaintiffs have not properly served Mishcon UK with any summons.  The Summons is addressed to "Mishcon de Reya LLP, 122 West 27th Street, 10th Floor, New York, New York 10001."  There is no, and has *never* been, such an entity at that address.  Mishcon NY is a separate legal entity that is not authorized to accept service for Mishcon UK.  Plaintiffs' statement to Arbitrator Pollack in support of the Default Order that they "served" the entity that they define as "Mishcon de Reya LLP" was incorrect.  Absent evidence of proper service, the Court need not proceed further.  Plaintiffs' request that they <u>now</u> be authorized to make service by email of the OSC, Pls.' Mot. at 5, is irrelevant to the improper service of the original subpoena on which Plaintiffs would now pursue contempt proceedings.

*Second*, the Second Circuit has made clear that Section 7 of the Federal Arbitration Act does not create independent jurisdiction for enforcement proceedings against third-party subpoena recipients.  *Dynegy Midstream Servs., LP v. Tramochem*, 451 F. 3d 89, 95 (2d. Cir. 2006).  Plaintiffs therefore must establish either general or specific jurisdiction, but they will not be able to demonstrate either.  Mishcon UK is an English law firm with headquarters in London.  General jurisdiction is thus absent.  *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559, 198 L. Ed. 2d 36 (2017).

Neither is there specific jurisdiction, which in the present circumstances may only be found where there is a "strong relationship" between an entity's New York conduct and the subpoena requests.  *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 94 (S.D.N.Y. 2015).  Plaintiffs will not be able to establish this "strong relationship."  The OSC focuses on the existence of Mishcon NY and that firm's rendering of a limited amount of advice in the English restructuring matter, but an affiliation does not create automatic jurisdiction over related entities.  *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 238 (S.D.N.Y. 2015)  Mishcon UK and Mishcon NY are separate entities.  *See* Sack Dec. Ex. 7 and 8.  They have different names.  They have different ownership structures.  They did not share profits or

Page 3

expenses.  Limited advice provided to Mishcon UK by Mishcon NY on the English insolvency matter does not create jurisdiction over the separate London firm.  Indeed, Mishcon UK's engagement letter with Plaintiff Mission-Media Limited states that the services are to be provided by Mishcon UK and that it is only qualified to provide advice on English law.  Sack Dec. Ex. 9.

        C.    <u>The Documents are Privileged Under English Law</u>

        Despite their attempted end run, Plaintiffs remain back where they started:  facing English law on privilege.  All documents are in England and in possession of an English law firm.  As Mishcon UK General Counsel Jarret Brown informed Mr. Sack on April 9, 2020:

> We are bound by our Code of Conduct and the case law as established by the English Courts.  Under our Professional Code of Conduct and the common law all files and letters are private and confidential as well as legally privileged.  The confidentiality and privilege belong to the clients and not to us as solicitors.  We are therefore unable to disclose anything in relation to these matters without our client's consent or an order of a court of competent jurisdiction, being an English Court.

Sack Dec., Ex. 8, at 2.  Mr. Brown's statement was precisely in line with English law.  *See*, *e.g.*, *R v Derby Magistrates' Court ex p B* reported at [1996] 1 AC 487 (describing legal advice privilege as "a fundamental condition on which the administration of justice as a whole rests"); *R (Morgan Grenfell & Co Ltd) v Special Comm'r of Income Tax*,  [2002] 1 AC 563 (Hoffman, J.) (privilege is "a fundamental human right long established in the common law").  The privilege extends as well to the underlying communications on which the privilege is based.  *Addlesee v Dentons Europe LLP* (English Court of Appeal), [2019] 3 WLR 1255.

        Faced with a claim of foreign law privilege in a subpoena to a foreign third party, courts in this Circuit perform a comity analysis.  *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 335 (S.D.N.Y. 2018) (*citing Gucci v. Li*, 768 F.3d 122 (2d Cir. 2014)) ("*Gucci II*").  Among the comity factors are "whether the information originated in the United States" (it did not, but rather, in connection with English court proceedings); the "availability of alternative means of securing" (Plaintiffs elected not to seek these documents in England as Mr. Brown invited them to do and as made possible by Section 44(2)(a) of the English Arbitration Act, whereby on proper application to an English court, documents relevant to a foreign arbitration may be produced); and "the hardship of compliance on the party from whom discovery is sought" (production of these documents would, as Mr. Brown noted, require the disclosure of client files <u>other than those of Plaintiffs here</u>, thus exposing Mishcon to liability).  Any motion would involve full application of the *Gucci II* factors.  Plaintiffs would not be able to survive this comity analysis.  For this reason alone the motion would be futile and should not proceed.

        We look forward to appearing before the Court on May 28.

        Respectfully,

        Robyn R. English-Mezzino